# TAB "6"

**DR. CHARLES BROWN'S DEPOSITION.MARCH 11, 2016.EXHIBITS**

# Florida Atlantic University

## Regulation 4.007          Student Code of Conduct

(1)     Statement of Philosophy.

Florida Atlantic University is a public research university with multiple campuses along the southeast Florida coast serving a uniquely diverse community. It promotes academic and personal development, discovery and lifelong learning. FAU fulfills its mission through excellence and innovation in teaching, outstanding research and creative activities, public engagement and distinctive scientific and cultural alliances, all within an environment that fosters inclusiveness.   FAU accomplishes its mission primarily through its students, teachers and researchers, its undergraduate educational programs, its graduate and professional offerings, and its linkages to other educational institutions and in the community.

The University's Student Code of Conduct is an integral part of the educational mission of the University, emphasizing the development of each individual's acceptance of his or her own personal and social responsibilities, and ensuring fairness and the satisfaction of certain minimum requirements described in this regulation for all students. Since behavior which is not in keeping with standards acceptable to the University Community is often symptomatic of attitudes, misconceptions, and emotional crises, reeducation and rehabilitative activities are essential elements of the student conduct process.

A humanistic approach is employed. The University's Student Code of Conduct is designed to provide and help maintain an atmosphere within the University Community that is conducive to academic pursuits.   Serious action against a student, such as separation, is considered and invoked only when other remedies fail to meet the needs of the University's mission.

The University, however, recognizes its responsibilities to all members of the University Community, and the protection of personal and institutional rights and property is a primary focus of the process described in this Regulation 4.007.

(2)     Principles.

The University principles address the respect for the law, regulations and policies, and the respect for people.

(a)     Respect for the Law.   Students are expected to respect and obey all regulations and policies of the University and all local, state and federal laws. If regulations, policies or laws are considered to be unfair or improper, it is expected that students will use appropriate, established, and lawful procedures to effect change.

(b)     Respect for Self and Others.   Students are expected to conduct themselves in a manner which exemplifies respect for people of all races, religions, and ethnic groups, and to adhere to one's personal values without unduly

1

Plaintiff Exhibit

Exhibit No.:     1
Name: Brown
Date: 03/11/2016
ESQUIRE

1485
FAU-0001485



imposing them on others. Respect for one's own mind and body, is essential. In interpersonal relationships, students are expected to respect the rights of others, particularly their right to refuse to participate in any activity. Students should take responsibility to serve as leaders in promoting compassion for others and challenging prejudice.

All students in the University Community, regardless of institutional or program affiliation, are expected to know and adhere to the regulations and policies of the University, as well as local, state, and federal laws.

(3) Jurisdiction of the University.
A student, student organization or a person who has submitted an application for admission, housing, or any other service provided by the University which requires a student or student organization status will be subject to the Student Code of Conduct for any conduct which occurs on University property, at University-sponsored events or off campus under the conditions described in this regulation. Any action of the University with respect to off-campus conduct shall be taken independently of any off-campus authority.

(4) Definitions:
   (a) Advisor – The term "advisor" refers to any person, including an attorney chosen by the student or the alleged victim at their own expense and initiative to assist him/her throughout the student conduct process.
   (b) Business days – The term "business days" shall be defined as Monday through Friday excluding official Florida Atlantic University holidays.
   (c) Chair – One of the faculty/staff members that is selected from the Student Conduct Board panel to chair the Student Conduct Board Hearing.
   (d) Charged Student – The term "charged student" refers to any student who has been charged with an alleged violation of the Student Code of Conduct.
   (e) Correspondence – The term "correspondence" refers to (1) written or electronic correspondence from the University sent to either the student's physical address on file with the Registrar, or to the student's FAU email address, if the student is a current student and (2) written or electronic correspondence from the student via the student's FAU email address.
   (f) Dean of Students – The term "Dean of Students" refers to any of the following persons or offices: Associate Vice President and Dean of Students, Associate Dean of Students, Assistant Dean of Students, or designee.
   (g) Hearing – The term "Hearing" shall refer to the Student Conduct Board Hearing and the Hearing Officer Hearing, as applicable.
   (h) Hearing Officer – A person authorized by the University to determine whether a student has violated the Student Code of Conduct. Such person may recommend sanctions that may be imposed when a violation has been committed.
   (i) Hearing Officer Hearing – A student conduct Hearing conducted by the Hearing Officer.
   (j) Information Session – The term "Information Session" refers to the conference at which the charged student is afforded the opportunity to

2

1486
FAU-0001486

review all materials that will be used in his or her Hearing.

(k) Investigation Conference – The term "Investigation Conference" refers to a conference meeting which includes the opportunity for the Dean of Students to interview and gather information with the student and an explanation of the process, the student's rights and a review of the incident.

(l) Senior Vice President – The term "Senior Vice President" refers to the Senior Vice President for Student Affairs or designee.

(m) Student – The term "student" refers to any person taking courses at FAU on any of its campuses or sites. Persons who withdraw after allegedly violating the Student Code of Conduct, are not officially enrolled for a particular term but who have a continuing relationship or enrollment with FAU, or have been notified of their acceptance for admission are considered "students." The term "student" will also refer to student organizations and persons living in University housing, although not enrolled at FAU.

(n) Student Conduct Board – The term "Student Conduct Board" means any person or persons authorized by the University to determine whether a student has violated the Student Code of Conduct. Such person or persons may recommend sanctions that may be imposed when a violation has been committed.

(o) Student Conduct Board Hearing – A formal student conduct Hearing conducted by the Student Conduct Board.

(p) Student Conduct Conference – The term "Student Conduct Conference" refers to the individual meeting with the student and the Dean of Students (or designee) after a Notice of Charges has been delivered. This meeting consists primarily of a discussion between the student and the Dean of Students (or designee) and affords the student the opportunity to choose "Responsible" or "Not Responsible" to the charges listed on the Notice of Charges, and determines the next course of action in the student conduct process.

(q) University or FAU – The term "University" or FAU refers to Florida Atlantic University, including all of its campuses and sites. The Student Code of Conduct applies to all campuses and sites of the University.

(r) University Community – Refers to Trustees, students, faculty, staff and all visitors, contractors and guests to the University or any of its campuses, facilities or events.

(s) University Official – The term "University official" refers to any person employed by the University to perform assigned teaching, research, administrative, professional or other responsibilities.

(t) Witnesses – The individuals who were present at the time of the incident in question, have information about the incident in question, or who are called upon to voluntarily present testimony at a Hearing. No character witnesses are permitted.

(5) Violations of the Code of Conduct: Any of the following actions constitute conduct for which a student, a group of students, or a student organization may be subject to student conduct/disciplinary action:

(a) Violence or threat of violence to others or against oneself or actions which

3

FAU_0001497

endanger any member or guest of the University Community; including physical or sexual assault and relationship/domestic violence.

(b) Theft, conversion, misuse, damage, defacing or destruction of University property or of the property of members of the University Community.

(c) Interference with the freedom of movement of any member or guest of the University.

(d) Interference with the rights of others to carry out their activities or duties at or on behalf of the University.

(e) Interference with academic freedom and freedom of speech of any member or guest of the University.

(f) Noncompliance with written, oral requests or orders of authorized University officials or law enforcement officers in the performance of their duties.

(g) Providing false information to University officials, forgery, the withholding of required information or the misuse or alteration of University documents or the University's name or logos.

(h) Misuse or duplication of any University key or access card to any University premises or services.

(i) Possession or use of firearms, explosives, ammunition, fireworks, weapons or unauthorized possession or use of hazardous materials or dangerous chemicals on University premises.

(j) Actions which cause or attempt to cause a fire or explosion, falsely reporting a fire, explosion or an explosive device; tampering with fire safety equipment or failure to evacuate University buildings during a fire alarm.

(k) Disorderly Conduct – Breach of peace, such as causing a disturbance or being unruly.

(l) Soliciting, aiding, abetting or inciting others to participate in conduct which violates this regulation.

(m) Lewd, obscene, indecent behavior or voyeurism.

(n) Acts of verbal, written (including electronic communications or internet activity) or physical abuse, threats, intimidation, harassment, coercion, or other conduct which threaten the health, safety or welfare of any person.

(o) Conduct which constitutes unlawful discrimination or harassment and/or violation of University Regulation 7.001, Equal Employment Opportunity/Affirmative Action or University Regulation 5.010, Anti-Discrimination and Anti-Harassment.

(p) Violation of University Regulation 4.006, Student Government and Student Organizations.

(q) Possession, use, delivery to, sale of, distribution of, controlled substances or drug paraphernalia; as defined in Florida Statutes.

(r) Posting of commercial advertising or engaging in commercial activity without appropriate authorization.

(s) Endangering the health, safety or welfare of members or guests of the University.

(t) Engaging in Hazing (Anti-Hazing Policy) – Hazing, is prohibited and includes, but is not limited to, the following:

1. Any action or situation which recklessly or intentionally endangers the mental or physical health or safety of a student for purposes,

4

including, but not limited to, of initiation or admission into, or affiliation with, any organization operating under the sanction of the University.

2. Brutality of a physical nature such as whipping, beating, branding, forced calisthenics, exposure to the elements; forced consumption of any food, liquid, liquor, drug, or other substances; or other forced activity which could adversely affect the mental, emotional or physical health or safety of the individual.

3. Any activity which could subject the individual to mental stress such as sleep deprivation, forced exclusion from social contact, forced contact which could result in embarrassment, or any other forced activity which could adversely affect the mental health or dignity of the individual.

4. Pressuring or coercing a student into violating University policies, federal, state, or local law.

5. Any other activity prohibited by Florida statutes on hazing.

6. Hazing may result in felony or misdemeanor charges.

(u) Violation of the FAU Information Resource Management Technology Policy.

(v) Repeated following, contacting of another person, or stalking (including cyber-stalking or cyber-bullying) or other inappropriate pursuit to the extent that it places that person in reasonable fear for his or her physical or emotional welfare.

(w) Any sexual act that occurs without the consent of the victim, or that occurs when the victim is unable to give consent.

(x) Any act which could constitute a violation of any local law or ordinance, State of Florida or Federal law.

(y) Misuse of Alcoholic Beverages.

1. Underage drinking of alcoholic beverages is prohibited.

2. The consumption of any alcoholic beverage in public places on the campus is prohibited except where specifically authorized by the University. All buildings, lobbies, walkways, and grounds of the campus are, for the purpose of this rule considered to be public places. Residential rooms and suites are considered to be private living quarters and are exempt from the public places restriction.

3. Violation of the Alcoholic Beverages Policy 1.2.

4. Hosting – Allowing underage drinking; allowing excessive drinking or allowing an intoxicated person to leave and/or operate a motor vehicle.

(z) Inappropriate Conduct at University-Sponsored Events – Students are expected to govern their behavior at all University-sponsored events and conduct themselves within the guidelines of the Student Code of Conduct. This applies to events that are held on or off campus.

(aa) Violation of probation – Failure to abide by conditions of probation.

(bb) Obstruction of Student Code of Conduct Process – Acts that disrupt or interfere with the University student conduct process, including but not limited to:

1. failure to appear at an official University Hearing when proper notification has been provided (nothing in this subsection shall be

1489

construed to compel self-incrimination);

2. knowingly falsifying, distorting or misrepresenting information before a student conduct proceeding;

3. deliberate disruption or interference with the orderly conduct of a student conduct proceeding;

4. knowingly initiating a complaint/referral without cause;

5. use of threats, coercion, or intimidation to discourage an individual's participation in or other proper participation or use of the student conduct process;

6. tampering with information to be used in a Hearing;

7. attempting to influence the impartiality of a member of the student conduct process prior to or during the course of the student conduct proceeding;

8. harassment or intimidation of any participant in the student conduct process; or

9. violating and/or failing to comply with or fulfill student conduct sanctions.

(cc) Disruptive Conduct – Any other action that impairs, interferes with or obstructs the mission, purposes, order, academic atmosphere, operations, processes and/or functions of Florida Atlantic University.

(dd) Any unauthorized use of electronic or other devices to make an audio or video recording of any person while on University premises without his/her prior knowledge or without his/her effective consent when such recording is likely to cause injury or distress. This includes, but is not limited to, surreptitiously taking pictures of another person in a gym, locker room or restroom.

(ee) Violation of any University Policy or Regulation published in hard copy or available electronically on the University's website.

(ff) Violation of Housing and Residential Life policies and procedures as outlined in either the Housing Contract or The Guidebook.

(gg) Violation of Greek Risk Management policy and procedure as outlined in hard copy or available electronically on the University's website.

(hh) Unauthorized solicitation of funds. University buildings and campus areas may not be entered for the purpose of raising funds for any person or organization other than officially registered student organizations, recognized University-related organizations, or officially recognized non-profit charitable organizations. Requests for solicitations must be submitted to the Senior Vice President for Student Affairs, or his/her designee, in advance and must conform to University policies and procedures and to applicable law.

(6) Off-Campus Conduct: The University shall take student conduct action against a student for violations committed off campus if any one of the following applies:

(a) The off-campus conduct is specifically prohibited by law or violates this Code of Conduct.

(b) The off-campus conduct demonstrates that the continued presence of the student on campus presents a danger to the health, safety, or welfare of the University Community; is disruptive to the orderly processes and functions of the University; or is intimidating or threatening to the

6

*1490*

FAU-0001490

University Community or an individual within the University Community.

(c)    The off-campus conduct is of such a serious nature that it adversely affects the student's suitability to remain a part of the University Community.

(7)    Court proceedings outside of the University:

(a)    University student conduct proceedings may be instituted against a student charged with conduct that potentially violates both the criminal law and this Student Code of Conduct, without regard to the pendency of civil or criminal litigation in court or criminal arrest and prosecution. Proceedings under this Student Code of Conduct may be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus at the discretion of the Dean of Students. Determinations made or sanctions imposed under this Student Code of Conduct shall not be subject to change because criminal charges arising out of the same facts giving rise to violation of University rules were dismissed, reduced, or resolved in favor of or against the criminal law defendant.

(b)    Any admission of guilt, responsibility or statement against the student's interest made by a student at off-campus proceedings shall be conclusive for University purposes.

(c)    A verdict of guilty, a plea of guilty, a plea of no contest *(nolo contendere)* or similar plea in a court of law by a charged student will operate as a conclusive finding that the student is "responsible" for the purpose of FAU student conduct proceedings.

(d)    The University may amend its charge(s) based on information obtained through an outside proceeding when that information is relevant to activity adversely affecting the University Community.

(8)    **Students' Rights.** A student against whom student conduct action may be taken shall have the following rights.

(a)    The right to be notified in correspondence of the charges against him/her in sufficient detail to prepare for a Hearing.

(b)    The right to a Hearing no less than five (5) business days after the University provides the student with a notice of charges, unless waived pursuant to this Regulation 4.007 or by final disposition in external court proceedings.

(c)    The right to a fair and impartial Hearing on the charges by the Student Conduct Board or Hearing Officer.

(d)    The right to review, not less than three (3) business days prior to the Hearing, the information which will be used by the University.

(e)    The right to present information and to arrange for witnesses to voluntarily present information relevant to his or her defense at the Hearing.

(f)    The right to be assisted by an advisor chosen at his/her own expense. The advisor is not permitted to speak during or to participate in any part of the student conduct process.

(g)    The right to hear and question adverse witnesses who voluntarily testify at the Hearing, unless the student has waived a Hearing.

(h)    The right not to be forced to present testimony which would be self-incriminating. However, the University is not required to postpone

*1491*

student conduct proceedings pending the outcome of any outside criminal or civil case.

(i)    The right to request an appeal of University action and the sanction imposed as long as appropriate appeal procedures are followed.

(j)    The right to have his/her status remain unchanged pending final student conduct action except in cases involving the health, safety or welfare of the University Community.

(k)    The right to be informed of their rights provided in this Regulation 4.007.

(9)    Emergency Measures.

(a)    The Dean of Students or designee has the authority to take appropriate immediate action against a student who poses a danger of imminent or serious physical harm to himself/herself or others at the University, or where the Dean of Students determines that an emergency exists which affects the health, safety or welfare of a student or the University Community. Emergency Measures include but are not limited to, one or more of the following:

1.    Interim Suspension.  A student under interim suspension may not attend classes, may not be on or come onto University property, may not participate in any University activities or organizations, and may not use University facilities, equipment or resources.

2.    Interim Removal from University Housing.  A student under interim removal from University Housing may not reside in University Housing and may not come into University Housing facilities and/or adjacent areas of University Housing.

3.    If the Dean of Students determines that other interim measures are appropriate to protect the health, safety, or welfare of the student or the University Community, the Dean of Students may:

a.    restrict or bar attendance of any or all classes;

b.    restrict or bar access or contact with individuals in the University Community;

c.    restrict or bar access to University property, places, facilities or equipment;

d.    restrict or ban participation in University activities or organizations; or

e.    otherwise restrict conduct or ban access to University resources.

4.    If a student's privileges are temporarily revoked as described in this Regulation 4.007, but the student is subsequently found not responsible for the violation, the University will:

a.    Correct any record of the change in enrollment status in the student's permanent records and reports in a manner compliant with state and federal laws; and

1492

FAU-0001492

      b.    Refund to the student, a pro rata portion of any charges for tuition and out-of-state fees, as appropriate, if the temporary revocation or suspension of the student's ability to attend classes lasts for more than 10 business days.

    5.    A Dean of Students hold on registration may immediately be placed on all students who have Emergency Measures taken against them, which prevents the student from accessing, changing or altering his/her course registration and/or admission status.

(b)    A student subject to Emergency Measures shall be furnished:

    1.    Written notice of the Emergency Measure and the reason(s) for the action.

    2.    The opportunity to participate in student conduct proceedings or to present relevant information for consideration of his/her case.

(c)    Emergency Interim Measures may be taken at any time prior to the conclusion of the University student conduct process including during the appeal process.

(10)    Procedures for Student Conduct Proceedings at Florida Atlantic University.

    (a)    Complaints.   Any person or entity may request that charges be filed against a student for alleged violation of law or University regulations or policies.   An investigation may take place of the circumstances of the complaint.   The complaint regarding a student's conduct must be submitted as follows:

    1.    Filing a police report with the University Police Department or requesting that a report from another law enforcement agency be sent to the University Police Department and referral to the Dean of Students; or providing a written and signed statement to the Dean of Students. Written statements should include all information and evidence the person making the complaint can produce.

    2.    Reports must be made to either law enforcement or the appropriate administrator, within 6 months of the incident, or knowledge about the incident. No student may be charged with a violation to the Student Code of Conduct if the report is made past the 6 month period. The forgoing time limit shall not apply, however, when a University official in his/her reasonable professional discretion determines that the circumstance warrant a waiver of the 6 month time limit.

(b)    When a complaint against a student is received by the Dean of Students, all other administrative processes and petitions at the University are suspended and may not be processed further until final disposition of the complaint or upon special permission by the Dean of Students.

(c)    The Dean of Students will determine if there are reasonable grounds to believe that the allegations of the complaint are true, and if true, would constitute a violation of the University's Code of Conduct.

    1.    The Dean of Students may conduct an Investigation Conference with the student. This conference shall include the opportunity for

9

the Dean of Students to interview and gather information from the student and an explanation of the process, the student's rights and a review of the incident with the student.  No student shall be required to testify against him/her.

2. The Dean of Students may conduct an investigation with others as related to the incident or complaint.

3. Nothing in this regulation shall prevent the mediation of a complaint when deemed appropriate by the University.

4. Nothing in this regulation shall prevent the disposition of a complaint administratively by written agreement with mutual consent of the parties involved. Such disposition shall be final and there shall be no subsequent proceedings.

5. If an alleged violation of the Student Code of Conduct is not handled through other appropriate channels, is not dismissed, or is not settled informally, then the Dean of Students may present in correspondence formal charges to the student.

(d) Notice of Charges. The notification of charges shall be in correspondence and include: the specific Student Code of Conduct violations, a brief description of alleged offenses, the student's rights, and an invitation to attend a Student Conduct Conference; the date and time of this Student Conduct Conference is also included.

1. The Student Conduct Conference shall take place no sooner than five (5) business days, excluding holidays and weekends, from the date of Notice of Charges, except in cases of emergency as described below, or unless waived by the student.

2. If a hold on registration is not already in effect, as an Emergency Measure, upon issuing the Notice of Charges the Dean of Students may place a hold on registration until final disposition of the complaint.

(e) Student Conduct Conference. After the Notice of Charges has been issued, a Student Conduct Conference may be scheduled.

1. There are no witnesses called and it consists primarily of a discussion between the charged student and the Dean of Students in an effort to resolve the matter.

2. The Student Conduct Conference is not audio taped or recorded.

3. At the conclusion of the Student Conduct conference, the charged student may accept or deny responsibility for the Student Code of Conduct violations listed on the Notice of Charges.

4. If the charged student chooses to accept responsibility on forms provided by the University (which forms shall describe the effect of waiving a Hearing), or fails to attend the Student Conduct Conference, thereby accepting responsibility for the charges, the Dean of Students may assess such sanctions as are deemed appropriate. This acceptance of responsibility or failure to appear shall constitute the charged student's waiver of a formal Hearing and right of appeal. The student retains the right only to appeal the severity of the sanction imposed.

5. Any sanctions imposed in cases where the charged student accepts responsibility or fails to attend the Student Conduct Conference

10

will be communicated in correspondence to the charged student within seven (7) business days of the Student Conduct Conference.

(f)   Formal Disposition by Hearing. When a charged student denies responsibility, a Hearing shall be scheduled no less than five (5) business days after the date of the Student Conduct Conference, except in cases of emergency as specified below, or unless waived by the student.

1.   A formal disposition by Hearing is defined as any Hearing before the Student Conduct Board or a University Hearing Officer.

2.   The student may choose to have his/her Hearing before the Student Conduct Board or a University Hearing Officer. This choice shall be made at the Student Conduct Conference.

3.   If the student does not choose an option, the Hearing shall be heard by a Hearing Officer.

(g)   Notice of Hearing. The notification of Hearing shall be in correspondence and include:

1.   The date, time, and location of the Student Conduct Board or Hearing Officer Hearing.

2.   Reference to this Regulation 4.007, his/her rights and the Hearing procedures.

3.   A reasonable date, time, and location for an Information Session, during which the student and his/her advisor may review a potential witness list and all materials to be used by the University in his/her case, which shall be no less than three (3) business days prior to the Hearing. The University shall also have the right to review all of the student's materials and list of witnesses to be used in the case. In cases where the Hearing is heard by a Hearing Officer, the charged student shall have the opportunity to challenge the impartiality of the Hearing Officer within three (3) business days of notification. The student shall state in correspondence the basis for such challenge. A Hearing Officer so challenged may be replaced by the Dean of Students for good cause shown. In the event that a student has opted not to challenge the impartiality of a Hearing Officer prior to the allotted three (3) business days, the assigned Hearing Officer shall remain as scheduled.

(h)   Postponement of Hearing. The student may request postponement of a Student Conduct Board Hearing or Hearing Officer Hearing in correspondence to the Dean of Students. The Dean of Students may grant a postponement when the circumstances presented demonstrate that a postponement is necessary to ensure fairness to the process or on any other reasonable grounds. The Dean of Students may postpone the Hearing on the University's behalf for administrative reasons.

(i)   In compliance with Title IX, Florida Atlantic University prohibits discrimination and harassment on the basis of sex. Individuals with questions or concerns about Title IX, and/or those who wish to file a complaint under Title IX, may contact the University's Title IX Coordinator as follows:

11

1495

FAU 0001405

Director
Equal Opportunity Programs
http://www.fau.edu/eop/
(561) 297-3004

(11)   Structure of the Student Conduct Board.
The Student Conduct Board shall consist of the following persons: two students, one faculty member/administrator and an optional fourth member who may be a student or a faculty member/administrator. The chairperson of a Student Conduct Board Hearing shall be one of the faculty members/administrators that serve on the panel. Faculty members, administrators, and students shall be selected by the Dean of Students Office for a Hearing.

The student board members are selected through an annual application and interview process, with the exception of the student justices from the Student Government Judicial Branch. All Student Conduct Board members, including Student Government Justices, will receive training from the Dean of Students Office.

(12)   Hearing Procedures.
(a)   The Hearing is not a legal proceeding. Formal rules of process, procedure, and/or evidence do not apply.
(b)   Objectives of the Hearing. Requisite levels of fairness and the satisfaction of certain minimum requirements will be provided to all participants during these proceedings. The Hearing shall have the following objectives:
   1.   Inform the student of the charges.
   2.   Give the accused student an opportunity to respond to the charges.
   3.   Review the facts of the case.
   4.   Determine if any violation of the Student Code of Conduct was committed and communicate its findings to the Dean of Students.
   5.   Recommend any sanction(s) to be imposed based upon the facts, as determined at the Hearing, and communicate any recommendations to the Dean of Students.
(c)   Witnesses. All parties to the Hearing may arrange for witnesses to voluntarily present relevant information during the Hearing. The questioning of witnesses shall be facilitated by the Hearing Officer or Student Conduct Board chair, as applicable. Such witnesses at Hearings will not be sworn in. Each witness will be admonished that he or she is required to tell the truth. A student giving untrue testimony at a Hearing is subject to student conduct charges.
(d)   Information.
   1.   The charged student and his/her adviser, if any, have the right to inspect all of the information that will be presented against the student at least three (3) business days before the Hearing. The University also has the right to review any information that the student intends to use at least three (3) business days before the Hearing.
   2.   The charged student may present information on his/her own

12

1494

FAU 0001496

behalf. Pertinent records, exhibits, and written statements may be accepted as information for consideration by the Hearing Officer or the Student Conduct Board at their discretion.

(e)  Burdens of Proof.  The Student Conduct Board or Hearing Officer shall determine whether it is more likely than not that the accused student violated the Student Code of Conduct by a preponderance of evidence. This means that the information presented supports the finding that it is more likely than not that the violation occurred.  The burden of proof is not on the charged student.

(f)  The charged student or the alleged victim may choose one advisor to be present during the process at the student's or alleged victim's expense and initiative. It is the student's or alleged victim's responsibility to make appropriate arrangements for the adviser to attend the Hearing, which shall not be delayed due to scheduling conflicts of the chosen adviser.  The adviser may be present to advise the student or alleged victim but may not speak for or present the case for the student or alleged victim, present statements or arguments, question witnesses or otherwise participate in the process.

1.  Members of the Student Conduct Board may not serve as a student's advisor at the Hearing.

2.  If the charged student or alleged victim chooses an attorney as his/her advisor at the Hearing, he or she must inform the Dean of Students at least three (3) business days before the Hearing.  In such cases the University will be advised by a University attorney as well.

(g)  Hearings.

1.  All Hearings before the Student Conduct Board or Hearing Officer will be digitally recorded by the University. That recording will serve as the only official record of these proceedings and shall be the property of the University.  No other recordings are permitted. Deliberations shall not be recorded.

2.  The following is a guide to the format of events for Hearings.  The Student Conduct Board or Hearing Officer may change the order if necessary.  The Student Conduct Board or Hearing Officer may question any party or witness directly.

a.  Review of Hearing procedures.

b.  Reading of Charges.

c.  Opening statement and presentation of information by the charged student.

d.  Questioning of voluntary University witnesses, followed by the questioning of charged student's voluntary witnesses.

e.  Questions directed to the charged student by the Student Conduct Board or Hearing Officer.

f.  Closing statement by the charged student.

g.  Deliberation by the Board or Hearing Officer (not taped).

h.  The Student Conduct Board or Hearing Officer may recommend a decision(s) and a sanction(s) to the Dean of Students.  Such recommendation of decision(s) and sanction(s) may be presented to the student by the Student

13

1497

FAU 0001407

Conduct Board or Hearing Officer.

(h)   The Student Conduct Board or Hearing Officer will find the student "Responsible" or "Not Responsible" for each of the alleged violations listed on the Notice of Charges, based solely on the information presented at the Hearing. The Student Conduct Board or Hearing Officer will inform the Dean of Students of its findings and any recommendation for sanctions based on its findings. If the Student Conduct Board cannot reach a finding of "Responsible" or "Not Responsible" to a charge within a reasonable time period based on the complexity of the case, the chairperson shall call the Board as deadlocked and the Dean of Students may call a new Hearing date with new Board members to hear that charge. No person serving on the first Board shall serve on the second Board. If the second Board also deadlocks, then the charges against the charged student shall be dismissed.

(i)   If the charged student fails to appear at the scheduled Hearing (after proper notice), the student shall be found Responsible for each of the alleged violations listed on the Notice of Charges and may not appeal the finding of responsibility. The student retains the right only to appeal the severity of the sanction.

(j)   The Dean of Students will review the findings and recommendations of the Student Conduct Board or Hearing Officer, as applicable. The Dean of Students will then make a decision as to the violation(s) in question and sanctions imposed, which decision which may consist of adopting, modifying, or rejecting the recommended decision and sanctions of the Student Conduct Board or Hearing Officer, or remanding the matter for rehearing. The Dean of Students will send a correspondence (referred to as a "Notice of Decision and Sanction") informing the student of the Dean of Students' final decision and sanctions and explaining any differences between the recommendation of the Student Conduct Hearing Board or Hearing Officer and the Dean of Students' final decision. Such correspondence will be sent to the student within a reasonable period of time after the conclusion of the Hearing.

(13)   (a)   Student Conduct Sanctioning is intended:

1.   To make sure the student sanctioned has learned from the experience.

2.   To educate the student so he or she does not commit the violation again.

3.   To offer the student the opportunity to make good on a mistake.

4.   To ensure that University expectations regarding appropriate behavior are clear.

5.   To educate the student concerning how his or her behavior impacts others in the University Community.

6.   To protect the University Community from people who may harm others in the University Community or who may substantially interfere with the educational mission of the University or other institutions.

(b)   Student Conduct Sanctions. The following sanctions or combination of sanctions may be imposed by the Dean of Students upon any individual

14

1498
FAIL-0001408

student or student organization found "Responsible" for violations of this Code. In light of the facts and circumstances of each case, a Student Affairs hold may be placed by the Dean of Students Office on Registration (if not already in place) upon receiving sanctions or failure to comply with the imposed sanctions. A student found responsible for a violation of the Student Code of Conduct shall be subject to sanctions commensurate with the offense with consideration given to any aggravating and mitigating circumstances, including but not limited to the student's conduct record. Potential sanctions to be imposed by the Dean of Students include:

1. Educational Activities – required attendance at educational programs, meeting with appropriate officials, written research assignments, planning and implementing educational programs, or other educational activities at the student's or student organization's own expense.

2. Counseling Assessment and Recommended Treatment – referral for assessment and treatment to the University Counseling and Psychological Services office or another agency at the student's expense.

3. Community/University Service – required completion of a specified number of hours of service to the campus or general community.

4. Termination or Deferred Termination in University Housing Contract/Assignment – Students remain financially responsible for obligations under the housing contract.

5. Restitution – Payment made for damage or loss caused by the responsible student.

6. Restriction or Revocation of Privileges – Temporary or permanent loss of privileges, including, but not limited to the use of a particular University facility, resources, equipment or other privileges.

7. Student Conduct Warning – A student conduct sanction in correspondence notifying a student that the student's behavior did not meet University standards. All student conduct warnings will be taken into consideration if further violations occur.

8. Student Conduct Probation – A student conduct sanction in correspondence notifying a student that his/her behavior is in serious violation of University standards and that restrictions are being placed on his or her activities. Some sanctions that may be placed on a student during a probationary period include, but are not limited to, restriction of the privilege to: participate in student activities or in student organizations; represent the University on athletic teams, student organizations or in other leadership positions; gain access to University Housing buildings or other areas of campus; use University resources and/or equipment; or contact specified person(s). If the student is found "responsible" for another violation of the code of conduct during the period of Student Conduct Probation, the University may consider increasing the level of the subsequent sanction.

9. Suspension – Mandatory separation from the University. During

15

14177

FAU 0001180

the period of suspension the student is barred from all FAU campuses unless specific permission is granted by the Dean of Students. Once the entire period of suspension has been served, the student may seek readmission by submitting a written request to the Dean of Students.

Deferred Suspension – The student will be officially suspended from the University, but the suspension will be deferred. If a student commits a subsequent violation of the Student Code of Conduct, while on deferred suspension and is found responsible, then, unless the Dean of Students determines otherwise in exceptional circumstances, the student will be immediately suspended in addition to any other sanctions imposed for the subsequent violation. Suspensions can be deferred for a semester or indefinitely.

10. Revocation of Admission and/or Degree – Admission to or a degree awarded from FAU may be revoked for fraud, misrepresentation or other violation of FAU standards in obtaining the degree or for other serious violations committed by a student prior to graduation.

11. Withholding Degree – FAU may withhold awarding a degree otherwise earned until completion of the process set forth in this Student Conduct Code, including completion of all sanctions imposed, if any.

12. Expulsion – Permanent dismissal from the University with no right for future readmission under any circumstances. A student who has been expelled is barred from all FAU campuses.

13. Deactivation of the Student Organization's status at the University.

14. Involuntary Withdrawal from individual courses or all courses registered for at the University – Students remain financially responsible for tuition and fees.

15. Other Appropriate Action – A student conduct action not specifically set out above, but deemed proper by the Dean of Students.

16. Alcohol Abuse Sanction Guidelines: Depending on the amount of alcohol involved and those cases involving severe intoxication and/or police or emergency medical response, dependent students (pursuant to the Internal Revenue Code) found responsible for offenses regarding the use, possession, sale or distribution of alcohol may be sanctioned as follows, at the discretion of University officials, in accordance with this Regulation. These violations are per academic year. The sanctions listed below serve only as guidelines.

   a. First Violation
      1. Completion of an Educational program and payment of the administrative costs for providing this program.
      2. Parental Notification (Parental Notification may be implemented depending on the severity or nature of

16

1500

the first violation).

    3.    Completion of 5 - 15 hours of Community/ University Service.

    b.    Second Violation

        1.    Completion of evaluation and recommended treatment from Counseling and Psychological Services.

        2.    Termination or Deferred Termination of University Housing Contract for a period of one year. Students are still financially responsible for obligations under the housing contract.

        3.    Parental Notification.

        4.    Student Conduct Probation for a minimum of 1 semester.

        5.    Completion of 15 - 30 hours of Community/ University Service.

        6.    Completion of an educational program and payment of administrative costs for providing this program.

    c.    Third Violation

        1.    Termination of Housing Contract for a minimum of 1 year – Student is suspended from campus housing and may be suspended from the University. Students are still financially responsible for obligations under the housing contract.

        2.    Parental Notification.

        3.    Student Conduct Probation for a minimum of 1 year.

        4.    Completion of up to 50 hours of Community/ University Service.

        5.    Completion of an Educational program and payment of administrative costs for providing this program.

17.    Drug Abuse Sanction Guidelines:  Depending on the amount of illegal substance involved, the student may be suspended or expelled from the University, as well as prosecuted. At the minimum, a student may be sanctioned as follows:

    a.    First Violation

        1.    Termination of Housing Contract – Student is suspended from University Housing for a minimum of 1 year.  Students are still financially responsible for obligations under the housing contract.

        2.    Student Conduct Probation for a minimum of 1 year.

        3.    Mandatory completion of evaluation and treatment from Counseling and Psychological Services.

        4.    Parental Notification.

        5.    Completion of 25 hours of Community/University Service.

        6.    Completion of an educational program and payment

17

1501

　　　　　　　　　　of administrative costs for providing this program.

b. Second Violation
1. Completion of 50 hours of Community/University service.
2. Suspension or deferred suspension for a minimum of 1 academic year.
3. Completion of an educational program and payment of administrative costs for providing this program.
c. Persons found to be involved in the sale of illegal drugs will be suspended or expelled from the University.

(14) Parental Notification Policy.

Florida Atlantic University is committed to the success of its students both inside and outside of the classroom. Therefore, it is our goal to maximize students' learning and development, and promote their health, safety and welfare. In this regard, FAU has implemented a Parental Notification policy in compliance with the request of the Florida Board of Governors. The Parental Notification policy permits the University the right to inform parents or guardians when their dependent student (pursuant to the Internal Revenue Code), under the age of 21, has been found in violation of the University Alcoholic Beverages and Drug-Free Environment policy.

(a) In non-emergency situations, parents of dependent students, under the age of 21, will be notified in writing. However, in emergency situations, parents may be notified by an immediate phone call from the Dean for Students or his/her designee.
(b) These guidelines do not preclude Parental Notification for other policy violations that may endanger the health, safety and well-being of a student or other individuals in the University Community. In addition, Parental Notification may occur in health and safety emergencies regardless of the student's age or dependent status.
(c) Students, whose parents are to be notified under these guidelines, will be informed, when possible, before such notification occurs and given an opportunity to initiate contact with their parents.

(15) Appeals. A student may appeal the decision of the Dean of Students (as to whether the student has been found responsible or not responsible) and/or the sanctions imposed by the Dean of Students.

(a) Standards for Appeal.
1. Failure to receive the minimum requirements of process, as described under this Regulation.
2. Severity of the sanction.
3. New material or information that could not be discovered at the time of the Hearing.
(b) All appeals must be postmarked or received in correspondence within five (5) business days of the date of the "Notice of Decision and Sanction" to the Senior Vice President for Student Affairs or designee for consideration. All appeals must specify the basis for the appeal. No person may hear or decide an appeal if he/she conducted or participated in

18

1500
FAU 0001500

the Hearing.

(c)  The burden of proof at the appellate level rests with the charged student.

(d)  The student's pre-decision status will remain unchanged pending the appeal determination by the Senior Vice President for Student Affairs or designee (that is, a student shall remain eligible to attend classes and University activities pending the University's final decision in the student conduct proceeding), except where the Senior Vice President for Student Affairs or designee determines that the safety, health or general welfare of the student or the University Community is involved, in which case a student's privileges at the University, including the ability to attend classes or engage in University activities, may be suspended on an interim basis as described under the Emergency Measures provisions of this Regulation. In that case, the provisions under Section 9 will also apply.

(e)  After considering the appeal, the Senior Vice President for Student Affairs or designee may reopen the Hearing, order a new Hearing with the same or new Conduct Board or Hearing Officer, uphold or reverse the prior decision of the Dean of Students or revise the sanction. The Senior Vice President for Student Affairs or designee shall provide the student written notice of his or her decision within ten (10) business days of receipt of the appeal request.

(f)  The appeal determination of the Senior Vice President for Student Affairs or designee is final and binding on all parties.  There are no further appeals within the University.  The student has a right to appeal the University's final decision to an external judicial forum.

(16)  Victims' Rights and Proceedings.
The University shall provide notice to the alleged Victim of his/her rights at least five (5) business days prior to the student conduct proceeding.

(a)  Some of the cases to which Victims' rights may apply include but are not limited to the following types of cases:

1.  Sexual Misconduct
2.  Endangerment
3.  Harassment
4.  Hazing
5.  Property (damage)
6.  Property (theft)

(b)  Rights:  To the extent applicable, victims shall have rights equivalent to those of a charged student, including the following rights:

1.  The right to have equivalent access to pre-hearing meetings with the Dean of Students or designee, as permitted by law, as that granted to the charged student.

2.  The right to review, not less than three (3) business days prior to the Hearing, the information which will be used by the University.

3.  The right to participate in the Hearing, present information, and to arrange for witnesses to voluntarily present information at the Hearing.

4.  The right to hear and question adverse witnesses who voluntarily testify at the Hearing, unless the charged student has waived a Hearing.

19

J5D3
FAU 0001599

8.   Comes within the jurisdiction of the off-campus conduct section of the Student Code of Conduct.

*Specific Authority: Article IX of the Florida Constitution, 1001.706, and Board of Governors Regulations 1.001, 6.010, and 6.0105. History—New 10-1-75; Amended 12-17-78, 6-9-83; Formerly 6C5-4.08; Amended 11-11-87, 6-7-88, 9-16-03; Formerly 6C5-4.008; Amended 5-10-06, 5-28-08, 6-23-10, 11-16-11.*

1574

FAU 0001504

FAU - Disciplinary Process

> FAU PEOPLE DIRECTORY   > SITE INDEX   > ALTERNATIVE VIEW

FAU WEB SEARCH      GO



**FAU** FLORIDA ATLANTIC UNIVERSITY
DEPARTMENT OF HUMAN RESOURCES

Home / Human Resources / Employee Relations / Disciplinary Process

HUMAN RESOURCES HOME     CONTACT


AMP and SP
Performance Appraisal Format

New Performance Appraisal
Tutorial

9/10 Month Assignment Options

**WORKERS' COMPENSATION**
'Return to Work'
Program
Employment Verification
    (The Work Number)
Electronic I9 / E-Verify
PAF/NOA Daily Log
    (from Processing & Records)
Holiday Schedule
**HR-Broward Campuses**
    Physical Wellness

**PeopleAdmin**
    PeopleAdmin Training
HR Forms Index
HR Topics Index
Diversity at FAU
    ADA/Americans with
    Disabilities Act) Newsletter

**Attendance & Leave**
**Benefits and Retirement**
**Classification & Compensation**
**Employee Relations**
**Employment**
**Processing & Records**
**Student Employment**
**Timekeeping**

Contact Us
    Managerial Staff
    AskHR / HR Unit Email
    Customer Survey
Forms
    Benefits
    Banner HR Security Form
    All Other Forms
**Employee Educational
Scholarship Program**

**FICA Alternative Plan**
**Personnel Policies**
**Personnel Regulations**

Employee Discounts

# EMPLOYEE RELATIONS



New Performance Appraisal Tutorial



## THE DISCIPLINARY PROCESS

Overview

Oral Reprimands

Written Reprimands

Suspensions

Terminations

OVERVIEW

Plaintiff Exhibit
Exhibit No.: 2
Name: Brown
Date: 03/11/2016
ESQUIRE

:PL000116

FAU - Disciplinary Process                                                   Page 2 of 3

Child Abuse & Neglect
Reporting Requirements

Human Resources

Campus Safety Info

Financial Affairs

FAU Home

Good communication between all members of the work team is one of the most critical aspects of creating and maintaining a positive, productive work environment.   A supervisor should insure that each employee is aware of the standards and expectations for the employee's position, as well as the work standards, policies and regulations that apply to employees in that department and to all of FAU.

A continuous flow of open communication between supervisors and employees is essential to a healthy workplace.  As soon as a supervisor becomes aware of a problem, the supervisor should bring it to the employee's attention so that it can be resolved at the earliest possible opportunity.  Addressing a problem as soon as it is apparent is always a positive step for both the supervisor and the employee.  It allows the supervisor to establish that the behavior or performance is not acceptable, gives the employee the guidance and direction to make a positive change and correct the situation, and helps to prevent future performance and disciplinary problems.

Disciplinary measures should be utilized in an attempt to correct the deficient behavior and should be constructive and consistent.  The employee should always be given an opportunity to explain their actions, either verbally or in writing.  Disciplinary action shall only be taken for just cause.  Before taking disciplinary action, a member of the Employee Relations Services team will work with the supervisor to determine if: (1) the employee had notice that the behavior is not acceptable; (2) the offense is job-related; (3) the offense has been investigated and there is reasonable belief that there is proof of misconduct; (4) the proposed discipline is consistent with past practice; and (5) the severity of the discipline is appropriate.  If disciplinary action is warranted, it may be either progressive or cumulative discipline.  Progressive discipline means that the employee is subject to progressively more severe forms of discipline for continued violations of the same standard of conduct.  Cumulative discipline means that prior disciplinary action may be used to determine the severity of the current disciplinary action, even though prior offenses were for a violation of a different standard of conduct.

NOTE: In order to insure fairness and consistency in our approach to correcting problems, supervisors should call a member of the Employee Relations Services team prior to taking disciplinary action.

Personnel Policies link

Personnel Regulations link

ORAL REPRIMAND

The Oral Reprimand is the least severe form of formal discipline.  Prior to the Oral Reprimand, the supervisor should meet with a member of the Employee Relations Services team to discuss the situation and determine the appropriate course of action.  A Record of Oral Reprimand Form should be completed and the supervisor should have a meeting in private with the employee.  The supervisor should inform the employee that this is an oral reprimand; should cite the specific standard of conduct being violated; explain the necessary corrective action; and advise the employee of possible future action if the problem is not corrected.  The supervisor should have the employee sign the oral reprimand form to acknowledge receipt, not agreement with the action, and should send a copy to Employee Relations for inclusion in the employee's personnel file.

WRITTEN REPRIMAND

A written reprimand is a more severe form of discipline.  Prior to the written reprimand the supervisor should meet with a member of the Employee Relations Services team to discuss the situation and determine the appropriate course of action.  Employee Relations will assist the supervisor in preparing and writing the written reprimand.  The supervisor informs the employee in writing of the specific offense(s) warranting disciplinary action and states in the written reprimand that further disciplinary action may occur if the problem is not corrected.  The supervisor should meet in private with the employee to discuss the disciplinary action.  The supervisor should inform the employee that this is a written reprimand; should cite the specific standard(s) of conduct being violated; explain the necessary corrective action; and advise the employee of possible future action if the problem is not corrected.  The supervisor should have the employee sign the written reprimand to acknowledge receipt, not agreement with the action, and should send a copy to Employee Relations for inclusion in the employee's personnel file.

SUSPENSIONS

A suspension is a severe form of discipline usually following one or more written reprimands or as a result of a very serious offense.  Suspension is an action taken by the University to temporarily relieve the employee of duties and place the employee on leave without pay.  Prior to the proposed

suspension the supervisor should meet with a member of the Employee Relations Services team to discuss the situation and determine the appropriate course of action. Employees receive written

FAU - Disciplinary Process

to discuss the situation and determine the appropriate course of action. Employees receive written notice of a suspension from the President, Provost or Vice President to whom the employee reports. The notice shall include the specific action taken; the specific offense for which the employee is being suspended; the reason for the suspension; the dates of the suspension; the consequences if the offense is repeated; and the right to file a grievance (grievance form). The supervisor should have the employee sign the suspension to acknowledge receipt, not agreement with the action, and should send a copy to Employee Relations for inclusion in the employee's personnel file.

TERMINATIONS

Termination is the final and most severe form of discipline. Prior to the proposed termination the supervisor should meet with a member of the Employee Relations Services team to discuss the situation and determine the appropriate course of action. Employees receive written notice of a termination from the President, Provost or Vice President to whom the employee reports. The notice shall include the specific action taken; the specific offense for which the employee is being terminated; the reason for the termination; the effective date of the termination; and the right to file a grievance (grievance form). The supervisor should have the employee sign the written reprimand to acknowledge receipt, not agreement with the action, and should send a copy to Employee Relations for inclusion in the employee's personnel file.

*The Employee Relations Services Team is here for you!*

   *Robin Kabat, Associate Director*
   *561 297-3072*
   *kabat@fau.edu*

   *Donna Newman, Employee Relations & Development Manager*
   *561 297-2554*
   *newmand@fau.edu*

   *Nancy Vincenty, Broward HR Manager*
   *Davie: 954 236-1245*
   *Fort Lauderdale: 954 762-5686*
   *nvincen6@fau.edu*

   *Janet Eagen, HR Representative*
   *561-297-0319*
   *jeagen@fau.edu*

Boca Raton | Dania Beach | Davie | Fort Lauderdale | Harbor Branch | Jupiter | Treasure Coast

Privacy Policy | University Regulations and Policies | Emergency Information | Get Help | Contact Us

An Equal Opportunity/Equal Access Institution
© Copyright 2013, Florida Atlantic University.
Last Modified 3/4/13

PL000118

Appendix II:  http://www.fau.edu/hr/EmpRelations/Disciplinary_0807.php

## THE DISCIPLINARY PROCESS

### Overview

### Oral Reprimands

### Written Reprimands

### Suspensions

### Terminations

### OVERVIEW

Good communication between all members of the work team is one of the most critical aspects of creating and maintaining a positive, productive work environment.   A supervisor should insure that each employee is aware of the standards and expectations for the employee's position, as well as the work standards, policies and regulations that apply to employees in that department and to all of FAU.

A continuous flow of open communication between supervisors and employees is essential to a healthy workplace. As soon as a supervisor becomes aware of a problem, the supervisor should bring it to the employee's attention so that it can be resolved at the earliest possible opportunity. Addressing a problem as soon as it is apparent is always a positive step for both the supervisor and the employee.  It allows the supervisor to establish that the behavior or performance is not acceptable, gives the employee the guidance and direction to make a positive change and correct the situation, and helps to prevent future performance and disciplinary problems.

Disciplinary measures should be utilized in an attempt to correct the deficient behavior and should be constructive and consistent.  The employee should always be given an opportunity to explain their actions, either verbally or in writing.  Disciplinary action shall only be taken for **just cause**.  Before taking disciplinary action, a member of the Employee Relations Services team will work with the supervisor to determine if: (1) the employee had notice that the behavior is not acceptable; (2) the offense is job-related; (3) the offense has been investigated and there is reasonable belief that there is proof of misconduct; (4) the proposed discipline is consistent with past practice; and (5) the severity of the discipline is appropriate.  If disciplinary action is warranted, it may be either progressive or cumulative discipline.  Progressive discipline means that the employee is subject to progressively more severe forms of discipline for continued violations of the same standard of conduct.  Cumulative discipline means that prior disciplinary action may be used to determine the severity of the current disciplinary action, even though prior offenses were for a violation of a different standard of conduct.

NOTE: In order to insure fairness and consistency in our approach to correcting problems, supervisors should call a member of the Employee Relations Services team prior to taking

disciplinary action.

Personnel Policies link

Personnel Regulations link

### ORAL REPRIMAND

The Oral Reprimand is the least severe form of formal discipline. Prior to the Oral Reprimand, the supervisor should meet with a member of the Employee Relations Services team to discuss the situation and determine the appropriate course of action. A Record of Oral Reprimand Form should be completed and the supervisor should have a meeting in private with the employee. The supervisor should inform the employee that this is an oral reprimand; should cite the specific standard of conduct being violated; explain the necessary corrective action; and advise the employee of possible future action if the problem is not corrected. The supervisor should have the employee sign the oral reprimand form to acknowledge receipt, <u>not agreement with the action</u>, and should send a copy to Employee Relations for inclusion in the employee's personnel file.

### WRITTEN REPRIMAND

A written reprimand is a more severe form of discipline. Prior to the written reprimand the supervisor should meet with a member of the Employee Relations Services team to discuss the situation and determine the appropriate course of action. Employee Relations will assist the supervisor in preparing and writing the written reprimand. The supervisor informs the employee in writing of the specific offense(s) warranting disciplinary action and states in the written reprimand that further disciplinary action may occur if the problem is not corrected. The supervisor should meet in private with the employee to discuss the disciplinary action. The supervisor should inform the employee that this is a written reprimand; should cite the specific standard(s) of conduct being violated; explain the necessary corrective action; and advise the employee of possible future action if the problem is not corrected. The supervisor should have the employee sign the written reprimand to acknowledge receipt, <u>not agreement with the action</u>, and should send a copy to Employee Relations for inclusion in the employee's personnel file.

### SUSPENSIONS

A suspension is a severe form of discipline usually following one or more written reprimands or as a result of a very serious offense. Suspension is an action taken by the University to temporarily relieve the employee of duties and place the employee on leave without pay. Prior to the proposed suspension the supervisor should meet with a member of the Employee Relations Services team to discuss the situation and determine the appropriate course of action. Employees receive written notice of a suspension from the President, Provost or Vice President to whom the employee reports. The notice shall include the specific action taken, the specific offense for which the employee is being suspended; the reason for the suspension; the dates of the suspension; the consequences if the offense is repeated; and the right to file a grievance (grievance form). The supervisor should have the employee sign the suspension to acknowledge

receipt, _not agreement with the action_, and should send a copy to Employee Relations for inclusion in the employee's personnel file.

## TERMINATIONS

Termination is the final and most severe form of discipline. Prior to the proposed termination the supervisor should meet with a member of the Employee Relations Services team to discuss the situation and determine the appropriate course of action. Employees receive written notice of a termination from the President, Provost or Vice President to whom the employee reports. The notice shall include the specific action taken, the specific offense for which the employee is being terminated; the reason for the termination; the effective date of the termination; and the right to file a grievance (grievance form). The supervisor should have the employee sign the written reprimand to acknowledge receipt, _not agreement with the action_, and should send a copy to Employee Relations for inclusion in the employee's personnel file.

*The Employee Relations Services Team* **is here for you!**

Robin Kabat, Associate Director
561 297-3072
kabat@fau.edu

Donna Newman, Employee Relations & Development Manager
561 297-2554
newmand@fau.edu

Nancy Vincenty, Broward HR Manager
Davie: 954 236-1245
Fort Lauderdale: 954 762-5686
nvincen6@fau.edu

Janet Eagen, HR Representative
561-297-0319
jeagen@fau.edu

## Florida Atlantic University

# Regulation 5.012 Employee Standards and Disciplinary Procedures

(1) Scope and Authority. This Regulation applies to all employees unless in direct conflict with an applicable collective bargaining agreement.

(a) The authority to discipline employees is vested in the University President. The President has delegated this authority as follows:
1. To the Provost or Vice President, or their designee, to whom the employee reports, for all disciplinary action; and
2. To the Dean, Director or higher level immediate supervisor, or their designee, for all disciplinary actions other than suspensions without pay and terminations.

(2) Standards of Conduct. The following standards are required for all employees. Departure from these standards by an employee will constitute offenses and will result in disciplinary action being taken:
(a) Employees shall respect the rights of others

(b) Employees shall exhibit a level of behavior supporting the mission, purposes and best interests of the University

(c) Employees shall perform assigned duties in an orderly, efficient and effective manner

(d) Employees shall adhere to all University regulations, policies and directives

(3) Disciplinary Procedures. Employees who intentionally act to impair, interfere with, or obstruct the mission, purposes, order, academic atmosphere, operations, processes, and functions of Florida Atlantic University shall be subject to appropriate disciplinary action by University authorities. This includes incompetence in the performance of job duties, and misconduct.

(a) Counseling. Except for offenses which require that immediate disciplinary action be taken, employees will receive counseling and will be given an opportunity to comply with the supervisor's instructions before disciplinary action is taken. Counseling shall be constructive and done with the primary purpose of helping the employee correct a problem.

(b) Just Cause 1. Procedure: Disciplinary action shall be taken only for just cause. The disciplining authority shall review alleged offenses to determine:
a. Notice - Whether the employee knew or should have known that the behavior is not acceptable.
b. Job-related offenses - Whether the offense occurred while the employee was at work or is job- related. If offense occurs while the employee is off duty and away from the job, any disciplinary action taken must be preceded by a decision, supported by facts, that the offense



Plaintiff Exhibit

Exhibit No.:   3

Name: Brown

Date: 02/11/2016

ESQUIRE

PL000579

adversely affects the employee's ability to perform assigned duties, or the University's ability to carry out its mission and purposes.

c. Proof of Misconduct – Whether the alleged offense has been investigated objectively and the investigation has established a reasonable belief that the University's standards of conduct have been violated.

d. Past Practice – Whether the proposed discipline is consistent with past treatment of employees who have committed similar offenses.

e. Appropriateness of Discipline – Whether the severity of the proposed discipline is reasonably related to the seriousness of the offense and the employee's past record of work performance, conduct, and discipline.

(c) Types of Disciplinary Action. The following types of disciplinary actions shall be administered in accordance with this Regulation:
1. Reprimand (oral and/or written)
2. Suspension
3. Discharge

(d) Probationary Employees. Probationary employees may be disciplined without a right of appeal and are subject to dismissal for any single offense or for failure to meet required performance levels during the probationary period.

(e) Guidelines for Disciplinary Action.
1. The employee shall be given written notice of any disciplinary action.
2. The notice shall state the reason for the disciplinary action.
3. A copy of the notice shall be retained in the employee's personnel file.

(4) Standards for Disciplinary Action. The appropriate level and severity of disciplinary action ranging from oral reprimand to termination shall be determined in each individual instance on a case by case basis.  Progressive discipline should be considered where appropriate, but is not required based on the nature and severity in each case. The following list of unacceptable conduct, further defined as incompetence or misconduct, is in violation of the University's Standards of Conduct, and shall include, but shall not be limited to, the following:

(a) Substandard, incompetent, unprofessional or incomplete performance of any responsibility or assigned duty;

(b) Insubordination- A deliberate and inexcusable refusal or failure to obey a reasonable order given by the supervisor or other authorized University personnel in the performance of their official duties. Such orders may include orders given by authorized University Administrators or University Police to vacate campus premises;

(c) Excessive tardiness, or a pattern of tardiness;

(d) Excessive absences, or a pattern of absences;

(e) Absence without authorization - Failure to obtain approval prior to any absence from work, to notify or call the appropriate supervisor or the supervisor's designee on the first day

PL000580

of an absence or obtaining leave based upon a misrepresentation or falsification. Includes unauthorized absence from the work area;

(f) Loafing - Continued and deliberate idleness during working hours which results in the employee's failure to perform assigned duties;

(g) Sleeping on duty;

(h) Falsification of records - The willful and deliberate misrepresentation, falsification or omission of any fact whether verbal, written, or communicated in some other medium;

(i) Unauthorized use of University property, equipment or personnel;

(j) Improper or careless use or operation of State property or equipment;

(k) Misuse or duplication of any University key;

(l) Unauthorized distribution and solicitation;

(m) Horseplay - Actions which disrupt or have the effect of disrupting the work of the participants or other employees;

(n) Fighting - Any form of violence, or threat of violence to others or against one's self;

(o) Threatening or abusive language;

(p) Illegal possession, sale, distribution or misuse of alcohol, drugs and other controlled substances, including drinking on the job, and/or reporting to work impaired under the influence of alcohol or drugs;

(q) Theft, conversion, misuse, damage or destruction of University property or of the property of members of the University community;

(r) Sabotage - Participation in an act of destruction or attempted destruction of University property or equipment;

(s) Conviction of a crime - The conviction of an employee of a crime, which would adversely affect the employee's ability or availability to perform the duties of the job, or the University's ability to carry out its mission;

(t) Violation of safety practices;

(u) Failure to wear required uniforms or appropriate clothing;

(v) Providing false information to University officials, withholding requested and/or required information, or the misuse of University documents;

(w) Prohibited Harassment - As defined by law, University Regulation or Policy;

PL000581

(x) Conduct unbecoming a public employee - Conduct, whether on or off the job, which adversely affects the employee's ability to continue to perform his assigned duties, or the University's ability to carry out its assigned mission;

(y) Abuse of position or unauthorized use of department identification;

(z) Divulging confidential information or unauthorized release of records;

(aa) Interference with the freedom of movement of any member or guest of the University;

(bb) Interference with the rights of others to carry out their activities or duties at or on behalf of the University;

(cc) Interference with academic freedom and freedom of speech of any member or guest of the University;

(dd) Possession of fireworks, explosives or weapons on campus without the express approval of the appropriate University authority;

(ee) Creating a false alarm;

(ff) Misuse of, or interference with, firefighting equipment;

(gg) Disturbing the peace;

(hh) Endangering the health, safety and welfare of members or guests of the University;

(ii) Failure to make restitution of debts owed to the University or State of Florida;

(jj) Failure to report revocation or suspension of driver's license where driving is a job-related function or the employee has access to University owned vehicles;

(kk) Failure to report a bribe;

(ll) Unlawful or careless use or display of a weapon by an employee required to carry a weapon during the performance of duties;

(mm) Handling of evidence by Law Enforcement Officers- A University law enforcement officer who fails to inventory, process and reasonably care for recovered or seized property or who converts, falsifies, conceals, destroys or withholds any property or evidence;

(nn) Repeated carelessness in, omission of, or inattention to, the performance of assigned duties and responsibilities;

(oo) Violation of State or Federal law or University Regulations or Policies; and

(pp) Violation of University Police General Orders.

(qq) Failure or refusal to cooperate in or interference with an internal investigation. All employees are required to fully and candidly cooperate with University or University sanctioned investigations and may not interfere in the process.

(5) Suspensions and Terminations. The appointment of an employee may be suspended or terminated for cause. Employees shall be given written notice of the proposed suspension or termination. The notice shall state the reason for the suspension or termination. During the period following notice, the employee may be reassigned at the discretion of the President, Provost or Vice President to whom the employee reports or their designee, or be placed on Administrative Leave with Pay. Written notice shall also be given upon a determination of final action.

(6) Administrative Leave pending investigation. The President, Provost or Vice President to whom the employee reports, or designee, may immediately suspend an employee from the performance of duties with or without pay when the employee is under investigation by the University for violation of the University's Standards of Conduct, or when there is reason to believe that the employee's presence on the job would adversely affect the functioning of the employee's office or the University, or jeopardize the safety or welfare of other employees, colleagues, or students. Administrative Leave may be with or without pay, pending final administrative action. Within two work days, excluding weekends and official holidays, the President, Provost or Vice President or designee, shall serve written notice upon the employee including a statement of the reasons for any action taken. If the employee has been placed on Administrative Leave without pay and ultimately prevails in the grievance procedure, the employee shall be reinstated with back pay.

(7) Notification. Notices given under this Regulation shall be hand-delivered or sent "return receipt requested" to the employee's address of record with the University. It is the duty of employees to keep current their address of record by notification to the University's Department of Human Resources.

(8) This Regulation shall apply to acts conducted on or off campus when relevant to the orderly conduct, processes and functions of the University.

*Specific Authority: Article IX of the Florida Constitution, Florida Board of Governors Resolution dated January 7, 2003, 1001.706 FS., 1001.74(5) FS., History– New 6-7-88, Formerly 6C5-5.014; Amended 11-9-05, 3-15-06, 3-18-09, 7-1-15.*

Student Hearing Request - Outlook Web App, light version                    Page 1 of 1



**Student Hearing Request**
Rozalia Williams

Sent:        Monday, March 18, 2013 6:32 PM
To:          Joanna Ellwood
Attachments: Student Hearing Docs.pdf (7 MB) [Open as Web Page]; Student Hearing Docs-2.pdf (3 MB) [Open as Web Page]

HI Joanna:

Attached please find the documents related to the student hearing we discussed today. Let me know if you have questions or need anything further..

RW

FAU
FLORIDA ATLANTIC
UNIVERSITY

Rozalia Williams, Ed.D.
Associate Dean of Students
Division of Student Affairs, FAU Broward Campuses
3200 College Avenue, Suite LA-109, Davie, FL 33314
Phone: 954-236-1236 | Fax: 954-236-1234
E-mail: rcwillia@fau.edu | Web site: http://www.fau.edu/student/broward/

Plaintiff  Exhibit
Exhibit No.:              4
Name: Brown
Date: 03/11/2016
ⒺESQUIRE

# FAU SECURITY OFFENSE/INCIDENT REPORT

Florida Atlantic University



NUMBER:

OFFENSE/INCIDENT TYPE: VERBAL THREAT

DATE OCCURRED: 02/25/13   WEEKDAY: MONDAY   TIME: 9:00 AM/PM

SPECIFIC OFFENSE LOCATION- LIBERAL ARTS BLDG. # 132

VICTIM: POOLE, DEANDRE   INJURED: ☐ YES ☑ NO

☑ FACULTY   ☐ STAFF   ☐ STUDENT   ☐ VISITOR

ADDRESS: 3200 COLLEGE AVE.   PHONE (HOME):
DAVIE, FL 33314   PHONE (BUS.)- 561-289-3894

OFFENSE REPORTED BY- DR. POOLE

☑ FACULTY   ☐ STAFF   ☐ STUDENT   ☐ VISITOR

ADDRESS: 3200 COLLEGE AVE   PHONE (HOME):
DAVIE, FL 33314   PHONE (BUS.)-

DATE REPORTED: 02/25/2013   WEEKDAY: MONDAY   TIME: 9:00 AM/PM

SUSPECTS: ☑ YES ☐ NO   VEHICLE INVOLVED: ☐ YES ☑ NO   WITNESSES: ☐ YES ☐ NO

DESCRIPTION OF STOLEN/DAMAGED PROPERTY/ESTIMATED VALUE/SERIAL NUMBERS:
N/A

BRIEF OFFENSE SUMMARY: ACCORDING TO DR. POOLE, AS A RESULT
OF A CLASS ACTIVITY ONE OF HIS STUDENT BECAME
HOSTILE TOWARDS HIM BECAUSE HE DISAGREED
WITH THE WAY THE ACTIVITY WAS CONDUCTED.
THE STUDENT A MR. RYAN ROTELA #Z23242352
WAITED UNTIL THE CLASS WAS DISMISSED TO

FAU POLICE NOTIFIED: ☑ YES ☐ NO   DATE/TIME NOTIFIED 02/25/2013 TIME:

NAME OF FAU OFFICER NOTIFIED: P.S.T. D. WILLIAMS

PROPERTY HELD FOR EVIDENCE: ☐ YES ☑ NO   RETURNED TO OWNER: ☐ YES ☑ NO
PROPERTY RELEASED TO: N/A   DATE: / /

SIGNATURE

PREPARED BY: P.S.T. D. WILLIAMS   DATE: 2/25/13   APPROVED BY:

FAU_0001439



**OFFENSE/INCIDENT SECURITY**
**REPORT - CONTINUATION**

Florida Atlantic University

Continuation from Page : 1

APPROACHED DR. POOLE TO VERBALLY BERATE HIM
STATING THAT HE WAS UNPROFESSIONAL AND AT
ONE STATED THAT HE WANTED STRIKE DR. POOLE
BECAUSE HE WAS SO UPSET WITH HIM.
MR. ROTELA WAS SHOUTING AT THE TOP OF VOICE
IN A THREATENING MANNER "DON'T YOU EVER DO
THAT AGAIN, YOU HEAR ME"

ACCORDING TO DR. POOLE HE WAS IN FEAR AT
THE TIME, AS MR. ROTELA TOOK A DEFENSIVE
POSTURE WHILE POUNDING HIS HANDS TOGETHER
WHILE HE SHOUTED AT HIM.

UPON THE ARRIVAL OF THIS OFC. MR. ROTELA HAD
ALREADY VACATED THE PREMISIS.

WITNESS # 1

CUTHBERT, HUBERT W/M 233237587

WITNESS # 1 WAS NOT ON THE SCENE TO TAKE A
STATEMENT. ACCORDING TO DR. POOLE THIS WITNESS
IS FRIENDS WITH MR. ROTELA AND THE TWO LEFT
THE CLASSROOM TOGETHER.

OFFICER NAME: D. WILLIAMS   OFFICER SIGNATURE:

PAGE 2 OF 2

FAU_0001440

3/28/13

+63750

Naomi Maxim - Chair of Multi Studies
Intercultural class -
                                    interdisplng -

[prob sd he]
lost his temper - was polite, dressed
appropriately at her meeting w/him.
                                    philosophy nature

Dr. Coale:
        Class exercise - "I'm not dng
        from
that "Brother" - What you did
was disrespectful - you are
unprofessnl." Next stdnt - it was
just a name on the piece of paper -
Moved on to the actual lesson
in the powerpoint.
        from
        Dismissed class a 7pm. Waited
after class to talk to him.
Asked  "Shaze" who not angry about it.
        After everyn left he walked up to
him + said "I wanted to knock your
right out. How dare you! If you
ever do this agn. you bess nevr you besss
                                    we.
        leave now. I called security.
He took his bag -

Until aftn Spring
        break

FAU_0001441

*witness*

**Subject:** Homework
**Date:** Tuesday, February 26, 2013 1:39:30 AM ET
**From:** Hubbert Cuthbert
**To:** Deandre Poole

Dr. Poole,

This is Sarge and I attached my homework to this document and want to thank you for accepting it.

I am at a loss for words in regarding what happened tonight. I just wanted to make it clear that I do not share the same views as my colleague and have the utmost respect for you as a professor.

Sincerely,
Andrew Cuthbert (Hubbert)

Page 1 of 1



Associate Vice President & Dean of Students
777 Glades Road, SS-8, 226
Boca Raton, FL 33431
Tel: 561.297.3546
Fax: 561.297.2502
*Division of Student Affairs*
*www.fau.edu/student*

WITNESS

## Student Information Form

Please provide us with your current contact and personal information:

Student Full Name: HUBERT ANDREW Cunnyay    Student Z Number: 23227587

Local Mailing Address:

5490  NW 93RD  TER

SUNRISE , FL  33351

Local Phone: _____

Cell Phone: (954) 6/08263

FAU E-mail: HCUTHBER720120 FAU ECU

Class Standing (please circle): Freshman    Sophomore    (Junior)    Senior

FAU Greek/Athletic Team/Club/Organization Affiliation(s):

VETERAN OWLS

Do you work on- or off-campus:    N/A

I (___am/ ✓am not) financial dependent on my family.

I (___am/ ✓am not) currently registered with FAU Office of Student with Disabilities.

Major: SOCIAL WORK ( BSW )

I have received a copy of the University Regulations 4.007 Student Code of Conduct process. Please sign and date at the bottom of this page.

HUBERT ANDREW Cunnery         _____         2/21/15
Student Name - Printed            Signature            Date

Boca Raton ♦ Dania Beach ♦ Davie ♦ Fort Lauderdale ♦ Harbor Branch ♦ Jupiter ♦ Treasure Coast
*An Equal Opportunity/Equal Access Institution*

FAU_0001443

_Hubbert_ Cuthbert Meeting                          3/28/13

Dr. Poole asked the class to do an
activity. Ryan said I'm not doing that -
They can pair together. Prof wanted
to see what people would do. We talk
about continued ??? in class but it
didn't bother me. Nobody had a problem
w/it but Ryan. Ryan wanted to wait
to talk to the prof. Wanted to tell Dr
Poole it really bothered him + how it
was disrespectful. Started talk loud say
Never do that again. Never do that again.
"You're going to hear from me."
Caught her off guard. I like Dr. Poole,
I like the activities! Had no problem w/it.
Does not share the same views.

Hubbert Cuthbert's Written statement.

3/13/13

RYAN WAS UPSET BECAUSE OF THE ASSIGNMENT. I COULD TELL BECAUSE OF WAY HE LOOKED IN HIS FACE. HE FELT IT WAS DISRESPECTFUL TO STEP ON A PAPER WITH JESUS NAME ON IT. AFTER CLASS HE TOLD THE PROFESSOR HE WAS UPSET. HE SAID HE WASN'T A CHRISTIAN BUT DOING THAT WAS DISRESPECTFUL TO CHRISTIANS. HE SPOKE IN A WAY THAT MADE DR. POOLE SAY YOU NEED TO LEAVE. WHEN DR. POOLE SAID IT HE WAS ON HIS PHONE. RYAN TURNED AROUND AND LEFT.

BASED ON WHAT WAS READ FROM DR. WILLIAMS JACKSONVILLE LAKE I WOULD HAVE BEEN CAUGHT OFF. I WROTE DR. POOLE AN EMAIL STATING THAT I RESPECT HIM AND OBVIOUSLY WHAT HAPPENED WAS NOT GOOD AND I DIDN'T SHARE THE SAME VIEWS. RYAN HAS A UNIQUE WAY OF EXPRESSING HIMSELF. "THAT'S JUST RYAN"

IN TERMS OF MY ABILITY TO RECALL SPECIFICS IS DUE TO BEING SERVICE CONNECTED WITH POST TRAUMATIC STRESS DISORDER.

FAU_0001446



Associate Dean of Students
3200 College Avenue, LA109
Davie, FL 33314
Tel: 954.236.1236
Fax: 954.236.1234
www.fau.edu/student

February 28, 2013

**INVESTIGATION CONFERENCE**

Mr. Ryan Rotela
2868 N.W. 94th Avenue
Coral Springs, FL 33065-5024

Dear Mr. Rotela:

The Office of Student Conduct has received a complaint alleging that your conduct may have violated the Florida Atlantic University Student Code of Conduct, Regulation 4.007, specifically:

**(N) Acts of verbal, written (including electronic communications) or physical abuse, threats, intimidation, harassment, coercion or other conduct which threaten the health, safety or welfare of any person.**

This office is investigating the complaint to determine whether there are reasonable grounds to believe that the allegations of the complaint are true, and if are true, would constitute a violation of the Student code of Conduct. The investigation conference shall include the opportunity for the Dean of Students or designee(s) to interview and gather information from you; explain the Student Code of Conduct process and your rights and review the incident. If there are reasonable grounds to believe that the allegations of the complaint are true and would constitute a violation of the University's Student Code of Conduct, FAU Regulation 4.007, you will receive a notice of charges for the alleged violations.

As part of the investigation into the alleged incident, I would like to meet with you so that you may provide clarifying information to help me better understand the situation. You are requested to meet with me on Thursday, March 7, 2013 at 4 p.m. in the Associate Dean of Students office on the Davie Campus in LA 109. If you are unable to attend this meeting, please contact Alicemaude Hernandez at 954-236-1236 by Tuesday, March 5, 2013 to arrange an alternative appointment.

While you have not yet been charged with violating the Student Code of Conduct, Florida Atlantic University's Student Code of Conduct guarantees you certain rights when you are accused of violating the Student Code of Conduct. You can view these rights as provided in Florida Atlantic University Regulation 4.007 which can be found on-line:  http://www.fau.edu/regulations/chapter4/4.007_Student_Code_of_Conduct.pdf

*Please be advised that a Student Affairs Hold may be placed on your records until final disposition of the complaint.*

Sincerely,


Rozalia Williams, Ed.D.
Associate Dean

Cc:/file

Boca Raton • Dania Beach • Davie • Fort Lauderdale • Harbor Branch • Jupiter • Treasure Coast
*An Equal Opportunity/Equal Access Institution*

FAU_0001447



Associate Vice President & Dean of Students
777 Glades Road, SS-8, 226
Boca Raton, FL 33431
Tel: 561.297.3546
Fax: 561.297.2502
*Division of Student Affairs*
*www.fau.edu/student*

## Student Information Form

Please provide us with your current contact and personal information:

Student Full Name: Ryan Rokela

Student Z Number: Z232 42352

Local Mailing Address:

2368 NW 94th Avenue

Local Phone: _____

Cell Phone: 954-825-1036

FAU E-mail: rrokela1@fau.edu

Class Standing (please circle): Freshman    Sophomore    (Junior)    Senior

FAU Greek/Athletic Team/Club/Organization Affiliation(s):

_____

_____

Do you work on- or off-campus:

_____

_____

I (✓am/__am not) financial dependent on my family.

I (__am/✓am not) currently registered with FAU Office of Student with Disabilities.

Major: Communications

I have received a copy of the University Regulations 4.007 Student Code of Conduct process. Please sign and date at the bottom of this page.

Ryan Rokela

Student Name - Printed

_____

Signature

3/7/13

Date

Boca Raton • Dania Beach • Davie • Fort Lauderdale • Harbor Branch • Jupiter • Treasure Coast
*An Equal Opportunity/Equal Access Institution*



*INVESTIGATION CONT*

Associate Vice President & Dean of Students
777 Glades Road, SS-8, 226
Boca Raton, FL 33431
Tel: 561.297.3546
Fax: 561.297.2502
*Division of Student Affairs*
*www.fau.edu/student*

## STUDENT RIGHTS

Please read and initial each line indicating your understanding of each student right provided to you in the Florida Atlantic University Student Code of Conduct, Regulation 4.007 (8). If you have any questions regarding these rights, please ask the Student Conduct or Housing staff member during the Student Conduct Conference or Investigation meeting.
Florida Atlantic University Regulation 4.007

(8)    A student against whom student conduct action may be taken shall have the following rights.

RR (a)    The right to be notified in correspondence of the charges against him/her in sufficient detail to prepare for a Hearing.

RR (b)    The right to a Hearing no less than five (5) business days after the University provides the student with a notice of charges, unless waived pursuant to University Regulation 4.007, or by final disposition in external court proceedings.

RR (c)    The right to a fair and impartial Hearing on the charges by the Student Conduct Board or University Hearing Officer.

RR (d)    the right to review, not less than three business days prior to the Hearing, the information which will be used by the University.

RR (e)    The right to present information and arrange for witnesses who voluntarily present information relevant to his or her defense at the Hearing.

RR (f)    The right to be assisted by an advisor chosen at his/her own expense. The advisor is not permitted to speak during or to participate in any part of the student conduct process.

RR (g)    The right to hear and question adverse witnesses who voluntarily testify at the hearing unless the student has waived a Hearing.

RR (h)    The right not to be forced to present testimony which would be self-incriminating. However, the University is not required to postpone student conduct proceedings pending the outcome of any outside criminal or civil case.

RR (i)    The right to request an appeal of the sanction imposed as long as appropriate appeal procedures are followed.

RR (j)    The right to have his/ her status remain unchanged pending final student conduct action except in cases involving the health, safety or welfare of the University Community.

RR (k)    The right to be informed of their rights provided in this Regulation 4.007.

By signing below, I acknowledge that I have reviewed and understand these "Student Rights".

Ryan Balela                          Z 00 2324 2352
Student Name - Printed               Z Number

                                     3/7/13
Student Signature                    Date

Co:/file

Boca Raton • Dania Beach • Davie • Fort Lauderdale • Harbor Branch • Jupiter • Treasure Coast
*An Equal Opportunity/Equal Access Institution*

FAU_0001449

Ryan

3/7/13

In class — did not approve
was offended because he moved
to another student w/o acknowledging it was wrong.
Escalated — had to go to a
Supervisor → will be

"Escalated" issue she never responded — started to reverse
I don't want this to happen again — wanted
his supervisor to know →

After class — went to him w/ an
absolute he can prove with.
I felt intimidated, afraid —
"   "   attacked — it was necessary to wait after class to
finish clean up w/ proof.
→ Fear, intimidation + persecution →

told that
him
he felt
after class
word
but not
said so
not
the
moment

Did not say don't ever do this again —
Asked him to leave & he
left.

Asked if he whether what I said →
re: Supervisor — need to go to the

Comments @ I the offenses at the
Stopped open class to
Further issue This offense doesn't happen
to a prior related occurrences.

FAU_0001450

(2nd.)

3/7/13
pg 2

He didn't feel what he was doing
was wrong. Could do it
again. Wanted to let her
know it could be off to
Syme.

Asked about what I "wanted" him to say —
Made clear I was seeking the facts.
Summarized what he said. He denied
it could even be perceived but
he engaged in predatory behavior.

FAU_0001451

## Rozalla Williams

**From:** Corey King
**Sent:** Saturday, March 09, 2013 4:39 PM
**To:** Rozalla Williams
**Subject:** RE: Consultation on Conduct Case

I will call you this weekend.

Dr. Corey A. King
Associate Vice President & Dean of Students
Student Services Building (SS #8), Room 226
Florida Atlantic University
~~~ Glades Road
Boca Raton, FL 33431-0991
Office: 561-297-3542
Fax: 561-297-2502

Confidentiality Notice: This E-Mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute, notify the sender by E-Mail at the address shown above, then delete the original message with any attachments. Thank you for your compliance.

**From:** Rozalla Williams
**Sent:** Friday, March 08, 2013 5:46 PM
**To:** Corey King
**Subject:** Consultation on Conduct Case

Hi Corey:

I have a case I'm investigating regarding a student who allegedly engaged in threatening behavior toward a professor. I met with the student yesterday and he denied the allegation. I spoke with the professor today and was informed he preferred that the student not come back to class until the matter is resolved.

The class meets again on Monday. However, I have not formally charged the student. Let's talk about the where we go from here. Call me when you get a chance.

RW



Rozalla Williams, Ed.D.
Associate Dean of Students
Division of Student Affairs, FAU Broward Campuses
3200 College Avenue, Suite LA-109, Davie, FL 33314
Phone: 954-236-1238 | Fax: 954-236-1234
E-mail: rowillia@fau.edu | Web site: http://www.fau.edu/student/broward/

1

## Rozalia Williams

**From:** Rozalia Williams
**Sent:** Friday, March 08, 2013 6:52 PM
**To:** 'rrotela2013@fau.edu'
**Cc:** 'rrotela1@gmail.com'
**Subject:** Notice of Charges
**Attachments:** Ryan Rotela Notice of Charges 3-8-2013.pdf

Mr. Rotela:

Attached please find a notice of charges for an alleged violation of the Student Code of Conduct, Regulation 4.007.

Please contact me if you have questions.

Dr. Williams



Rozalia Williams, Ed.D.
Associate Dean of Students
Division of Student Affairs, FAU Broward Campuses
3200 College Avenue, Suite LA-109, Davie, FL 33314
Phone: 954-236-1236 | Fax: 954-236-1234
E-mail: rrowillia@fau.edu | Web site: http://www.fau.edu/student/broward/

'eft vorceman @ 655 pm at (954) 825-1036

7:13 pm Ryan called. Will let me know on Monday if he can make the meeting. It may conflict up his work schedule. Asked about his class. I told him he cannot go to class because the prof believes he allegedly, under the code & Ryan does not believe he engaged in behavior that violates the code. Told him he can waive his right to a hearing sooner than 5 days if he needs to reschedule

7:18 Called Dr. Poole & informed her Ryan should not come to class.



**FAU**
**FLORIDA**
**ATLANTIC**
**UNIVERSITY**

Office of Associate Dean of Students
Broward Campuses
3200 College Avenue, LA109
Davie, FL 33315
tel: 954.236.1236
fax: 954.236.1234
*Division of Student Affairs*
*www.fau.edu*

### NOTICE OF CHARGES

March 8, 2013

Mr. Ryan Rotela
2868 N.W. 94th Avenue
Coral Springs, FL 33065-5024

Dear Mr. Rotela:

The office has received a complaint alleging your involvement in conduct which may constitute a violation of Florida Atlantic University's Student Code of Conduct, Regulation 4.007, specifically: (N) Acts of verbal, written (including electronic communications) or physical abuse, threats, intimidation, harassment, coercion or other conduct which threaten the health, safety or welfare of any person.

After an initial determination by this office that the student conduct process should proceed, you are being charged with violating FAU's Student Code of Conduct, Regulation 4.007, specifically: (N) Acts of verbal, **written (including electronic communications) or physical abuse, threats, intimidation, harassment, coercion or other conduct which threaten the health, safety or welfare of any person.**

You are requested to attend a Student Conduct Conference with me on Friday, March 15, 2013 at 1:00 p.m. During this session, you will be informed about the conduct process, your rights, a summary of the evidence and options available for the resolution of the charges. Any questions or concerns can also be addressed at this meeting. <u>In the interim, you may not attend class (SPC 3710) or contact any of the students involved in this matter—verbally or electronically—or by any other means.</u>

*Failure to attend the Student Conduct Conference constitutes your acceptance of responsibility for the charges above, your waiver of a University Hearing and waiver of any right of appeal to being held responsible for violating FAU's Student Code of Conduct. In this event, Notice of Sanctions will be issued. You retain the right to appeal the severity of any imposed sanctions. See Regulation 4.007(10)(e)(4).*

You have a number of rights guaranteed by the University as provided in Florida Atlantic University Regulation 4.007 (8) which can be found on-line:
http://www.fau.edu/regulations/chapter4/4.007_Student_Code_of_Conduct.pdf
*Please be advised that a Student Affairs Hold may be placed on your records until final disposition of the complaint.*

Sincerely,

Rozalia Williams, Ed.D.
Associate Dean
Cc:/file

Boca Raton • Dania Beach • Davie • Fort Lauderdale • Harbor Branch • Jupiter • Treasure Coast
*An Equal Opportunity/Equal Access Institution*

FAU_0001454



— Student Confirmer —

Associate Vice President    & Dean of Students
777 Glades Road, SS-8, 226
Boca Raton, FL 33431
Tel: 561.297.3546
Fax: 561.297.2502
Division of Student Affairs
www.fau.edu/student

## STUDENT RIGHTS

Please read and initial each line indicating your understanding of each student right provided to you in the Florida Atlantic University Student Code of Conduct, Regulation 4.007 (8). If you have any questions regarding these rights, please ask the Student Conduct or Housing staff member during the Student Conduct Conference or Investigation meeting.

Florida Atlantic University Regulation 4.007

(8)  A student against whom student conduct action may be taken shall have the following rights.

__RR__(a)  The right to be notified in correspondence of the charges against him/her in sufficient detail to prepare for a Hearing.

__RR__(b)  The right to a Hearing no less than  five (5) business days after the University provides the student with a notice of charges, unless waived pursuant to University Regulation 4.007, or by final disposition in external court proceedings.

__RR__(c)  The right to a fair and impartial Hearing on the charges by the Student Conduct Board or University Hearing Officer.

__RR__(d)  the right to review, not less than three business days prior to the Hearing, the information which will be used by the University.

__RR__(e)  The right to present information and arrange for witnesses who voluntarily present information relevant to his or her defense at the Hearing.

__RR__(f)  The right to be assisted by an advisor chosen at his/her own expense  The advisor is not permitted to speak during or to participate in any part of the student conduct process.

__RR__(g)  The right to hear and question adverse witnesses who voluntarily testify at the hearing unless the student has waived a Hearing.

__RR__(h)  The right not to be forced to present testimony which would be self-incriminating.  However, the University is not required to postpone student conduct proceedings pending the outcome of any outside criminal or civil case.

__RR__(i)  The right to request an appeal of the sanction imposed as long as appropriate appeal procedures are followed.

__RR__(j)  The right to have his/ her status remain unchanged pending final student conduct action except in cases involving the health, safety or welfare of the University Community.

__RR__(k)  The right to be informed of their rights provided in this Regulation 4.007.

By signing below, I acknowledge that I have reviewed and understand these "Student Rights".

Ryan Rotela
Student Name - Printed

2232 4235 2
Z Number

Student Signature

05-15-13
Date

Cc:/file

Boca Raton  •  Dania Beach  •  Davie  •  Fort Lauderdale  •  Harbor Branch  •  Jupiter  •  Treasure Coast
An Equal Opportunity/Equal Access Institution

**FAU**
**FLORIDA ATLANTIC UNIVERSITY**

Associate Vice President & Dean of Students
777 Glades Road, SS-8, 226
Boca Raton, FL 33431
Tel: 561.297.3546
Fax: 561.297.2502
*Division of Student Affairs*
*www.fau.edu/student*

August 23, 2010          **NOTICE OF INTERIM SUSPENSION**

Name
Address

Dear Ms. Student Name:

The Office of Dean of Students/Student Conduct is in receipt of information concerning your alleged involvement in conduct which may constitute a violation of Florida Atlantic University's Student Code of Conduct, Regulation 4.007. The nature of these actions affects the health, safety and welfare of a student or the University community and as designee to the Associate Vice President and Dean of Student Affairs, I have determined it is necessary to take Emergency Measures as permitted by University Regulation 4.007 (9).

**Provide allegation information here:**

This office is placing you on **Interim Suspension** following the procedures outlined in the Student Code of Conduct, FAU Regulation 4.007(8). You will be furnished the opportunity to participate in your student conduct proceedings or to present relevant information for consideration of your case.

This office reminds you as **a student on interim suspension: you may not attend classes, may not be on or come onto University property, may not participate in any University activities or organizations, may not modify your registration status and may not use University facilities, equipment or resources.**

A Student Affairs hold on registration may immediately be placed on all students who have Emergency Measures taken against them, which prevents you from accessing, changing or altering your course registration and/or admission status.

The period of interim suspension will remain in effect until you receive further written notice from me or the Office of Associate Vice President and Dean of Students/Student Conduct, or upon the conclusion of the University Student Code of Conduct process. For any other questions, regarding this matter, please contact the Office of Associate Vice President and Dean of Students/Student Conduct at 561-297-3542.

You are hereby advised that you have a number of rights available to you by the University as provided in FAU Regulation 4.007 which can be found on-line at:  http://www.fau.edu/regulations/chapter4/4.007_Student_Code_of_Conduct.pdf.

Sincerely,


Name
Title

Enclosures
Cc: Charles L. Brown, Sr. Vice President of Student Affairs
     Corey A. King, Associate Vice President and Dean of Students
     Chief Charles Lowe, FAU Police
     Jill Eckardt, Director of University Housing & Residential Life (Resident student only)

Plaintiff Exhibit
Exhibit No.: 5
Name: Brown
Date: 03/11/2016
@ESQUIRE

*An Equal Opportunity/Equal Access Institution*



1505



Associate Vice President & Dean of Students
777 Glades Road, SS-8, 226
Boca Raton, FL 33431
Tel: 561.297.3546
Fax: 561.297.2502
*Division of Student Affairs*
*www.fau.edu/student*

September 12, 2011                          **NOTICE OF CHARGES**

Name
Address

Dear Mr./Ms. Name

The office has received a complaint alleging your involvement in conduct which may constitute a violation of Florida Atlantic University's Student Code of Conduct, Regulation 4.007. The complaint concerns allegations that you enter allegations here....

After an initial determination by this office that the student conduct process should proceed, you are being charged with violating FAU's Student Code of Conduct, Regulation 4.007 (5):

**Charge 1 4.007 (5q) Possession, use, delivery to, sale of, distribution of, controlled substances or drug paraphernalia; as defined in Chapter 893, Florida Statutes.**
**Charge 2 4.007 (5x) Any act which could constitute a violation of any local law or ordinance, State of Florida or Federal law.**

You are requested to attend a Student Conduct Conference with me on **Monday, September 19, 2011.** If you are unable to attend this conference; you must contact **my office staff** by **Friday, September 16,** before **5:00PM,** to arrange an alternative appointment. During this session, you will be informed about the conduct process, your rights, a summary of the evidence and options available for the resolution of the charges. Any questions or concerns can also be addressed at this meeting.

*Failure to attend the Student Conduct Conference constitutes your acceptance of responsibility for the charges above, your waiver of a University Hearing and waiver of any right of appeal of the findings of responsibility in violating FAU's Student Code of Conduct. In that event, a Notice of Sanctions will be issued and you would retain the right only to appeal the severity of any imposed sanctions. See Regulation 4.007(10)(e)(4).*

*Please be advised that a Student Affairs Hold may be placed on your records until final disposition of the complaint.*

You have a number of rights guaranteed by the University as provided in Florida Atlantic University Regulation 4.007 (8) which can be found on-line: http://www.fau.edu/regulations/chapter4/4.007_Student_Code_of_Conduct.pdf

Sincerely,


Joanna Ellwood
Assistant Dean of Students

1506

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 15-CV-60621-DPG

ROZALIA WILLIAMS,

             Plaintiff,

vs.

FLORIDA ATLANTIC UNIVERSITY,
BOARD OF TRUSTEES, CHARLES L.
BROWN, an individual, and COREY
KING, an individual,

             Defendants.

_____/

## NOTICE OF SERVICE OF ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT, CHARLES L. BROWN

Defendant, CHARLES L. BROWN, by and through his undersigned counsel, Whitelock &

Associates, P.A., and pursuant to Fed.R.Civ.P. 33 and S.D. Fla. L.R. 26.1, hereby provides these

responses and objections to Plaintiff's First Set of Interrogatories, as follows:

             Respectfully submitted,

             WHITELOCK & ASSOCIATES, P.A.
             300 Southeast Thirteenth Street
             Fort Lauderdale, FL  33316
             Telephone:    (954) 463-2001
             Facsimile:    (954) 463-0410
             Counsel for Defendant, Charles L. Brown


             /s/Christopher J. Whitelock
             CHRISTOPHER J. WHITELOCK
             Florida Bar No. 0067539



Plaintiff Exhibit

Exhibit No.:  6

Name: Brown

Date: 03/11/2016

ESQUIRE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via

e-mail to: : R. Martin Saenz, Esq., Ria N. Chattergoon, Esq., Saenz and Anderson, PLLC, 20900

N.E. 30th Avenue, Suite 800, Aventura, FL 33180, e-mail: msaenz@saenzanderson.com and e-mail:

ria@saenzanderson.com and Oscar E. Marrero, Esq., Lourdes Wydler, Esq., Marrero & Wydler,

2600 Douglas Road, PH-4, Coral Gables, FL 33134, e-mail: oem@marrerolegal.com and e-mail:

lew@marrerolegal.com , this 7TH day of March, 2016.


/s/Christopher J. Whitelock
CHRISTOPHER J. WHITELOCK

2

## GENERAL OBJECTIONS

1.       The Defendant objects to all Definitions and Instructions set forth in Plaintiff's First Set of Interrogatories as overly broad, burdensome, oppressive and an improper attempt to impose discovery obligations on Defendant beyond those established by the Federal Rules of Civil Procedure and/or the Local Rules of this Court.

2.       The Defendant objects to Plaintiff's First Set of Interrogatories to the extent that they seek documents or information not relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

3.       The Defendant objects to Plaintiff's First Set of Interrogatories to the extent that they seek documents and information which are protected from discovery by virtue of the attorney-client privilege.

4.       The Defendant objects to Plaintiff's First Set of Interrogatories to the extent that they seek documents or information that constitutes the work-product or trial preparation materials of Defendant's attorneys or other representative and reflect the mental impressions, conclusions, opinions, or legal theories of Secretary's attorneys or other representatives.

5.       The Defendant objects to Plaintiff's First Set of Interrogatories to the extent that they call for documents and information that are not currently in the Defendant's possession, custody or control.

6.       The Defendant has not completed its discovery, investigation or preparation for trial of this matter. Accordingly, documents and information are provided without prejudice to Defendant's rights to make further objections and present additional information and documents which are hereafter discovered or which further discovery and investigation may indicate are relevant

3

to this action and called for by the Defendant.

7.  The Defendant reserves the right to object as to the competency, relevancy, materiality and admissibility of the information disclosed  pursuant to Plaintiffs' First Set of Interrogatories.

8.  These general objections are applicable to each and every one of the following responses and objections, and failure to repeat an objection in response to the specific request shall not be deemed a waiver of these general objections.

Without waiving these objections, the Defendant responds to Plaintiff's First Set of Interrogatories in compliance with the Federal Rules of Civil Procedure and the Local Rules for this Court and construes the Interrogatories as written without reference to the definitions and instructions, using Defendant's understanding of the ordinary meaning of the terms and phrases used in the Interrogatories.

## RESPONSES TO INTERROGATORIES

1.      Identify any person who has claims to have or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings filed in this action, or any fact underlying the subject matter of this action.

        Paula Behul
        Eric Hawkes
        Dawn Howard
        Corey King
        Eileen Mates
        Terry Mena
        Dr. Mary Jane Saunders

2.      Please state whether you have any knowledge regarding sexist and/or derogatory comments made by Corey King to Plaintiff and/or any other female member of FAU. Please state the date you became aware of such comments, the date such comment was made and any other information personally known to you.

        The Defendant objects as this interrogatory has no time limits and is otherwise overly broad or fails to obtain information as reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding, None.

3.      Please state whether you demanded Plaintiff accept a salary lower than her counterparts, upon her appointment as Associate Dean of Students, and the reason for such a demand.

        Yes; the Plaintiff was paid in accordance with the current budget at that time.  The reason for this was the Plaintiff's performance and the fact that other employees had more experience than the Plaintiff, including the fact that these employees had been Assistant Associate Deans longer than the Plaintiff.

4.      Please describe any complaints made against Plaintiff, by any individual, with regard to her performance as an Associate Dean of Students. In your answer, identify the person(s) making

5

the complaint, the last know telephone number and address of each person who made a complaint,

the subject of the complaint and identify any documents used to answer this interrogatory.

David Binn.  The individual made a complaint against the Plaintiff for unfair and sexist discriminatory behavior and being extremely difficult to work with as an employee.

Eric Hawkes.  This individual made complaints about the Plaintiff regarding the overall difficulty and professionalism of the Plaintiff.

Dawn Howard.  This individual made complaints about the Plaintiff regarding the overall difficulty and professionalism of the Plaintiff.

Christine Lynch.   This individual made complaints about the Plaintiff regarding the overall difficulty and professionalism of the Plaintiff.

5.       Please state whether Corey King made any discriminatory comments regarding the

color of Plaintiff's skin, her professionalism and her college education.

None.

6.       Please state the reason(s) for Plaintiff's separation of employment with Florida

Atlantic University and identify the person who recommended Plaintiff's separation of employment,

including all decision-maker(s).

I made the recommendation to then President Saunders along with then FAU counsel and the Human Resources Department. I do not recall the exact names of the attorney and the representatives in HR.

The reasons for the separation were that over a period of time numerous people could not work with the Plaintiff including Mr. King, she did not follow the protocol with respect to the Rotela incident.

7.       Please state any and all policy or procedure violations Defendant claims Plaintiff

violated with regard to the Ryan Rotela incident on or around February or March 2013 and explain

why or how you believe Plaintiff violated the relevant policy or procedure. In your answer, please

identify any documents that support your response.

6

The policies would be set forth in the then FAU's Handbook; however, I am no longer an employee or associated with FAU so I can not specifically state through this interrogatory the exact policy, if any.

8.      Please identify whether you made the decision to drop any charges against Ryan Rotela for the February 26, 2013 incident.  If you did not, please identify the person who made such decision.

No; I do not recall who made the decision, if anyone, to drop the alleged charges against Mr. Rotela.

9.      Please identify the person or persons who suggested that Plaintiff receive a letter of reprimand for the Ryan Rotela incident and the ultimate reason Plaintiff did not receive a letter of reprimand. In your answer, please identify any and all documents, emails or correspondences that support your answer.

It was recommended by Mr. King to me that the Plaintiff receive a letter of reprimand, but I made the decision to terminate the Plaintiff based upon the reasons stated above in interrogatory number six (6) above.

10.     Please identify who made the decision to reorganize your department in 2013 which resulted in the reassignment of Plaintiff under Corey King's supervision . In your answer, identify the reasons for the 2013 reorganization.

The Defendant objects as this request is not reasonably calculated to lead to the discovery of admissible evidence as it has no bearing on the relationship to any of the alleged issues in the  Complaint.  Notwithstanding this objection, I made the decision to reorganize, and multiple  departments were then consolidated in an effort to maximize resources in the Department at issue, all Associate Deans reported to a Social VP as well as the Dean of Students at the Boca FAU campus to ensure  that all departments were in sync in terms of policy reporting, training and the overall philosophy of the Department.

11.     Please state whether any complaints regarding unfair treatment, discrimination or harassment, against Corey King have ever been made to you.

> The Defendant objects as this interrogatory has no time limits and is otherwise overly broad or fails to obtain information as reasonably calculated to lead to the discovery of admissible evidence. None.

12.     Please state whether you had any discussions, correspondences (including emails) with the members of the Faculty Senate regarding their investigation of the Ryan Rotela incident and provide a detailed description of those discussions including the name, the person, date/time and subject matter.

> Yes, I was interviewed, but I do not recall the specific and exact details of these discussions. The discussions however concerned the content of the course at issue with Mr. Rotela and the overall issue of academic freedom. At one point, there was a discussion about an apology by FAU and how they support academic freedom and that the professor at issue would no longer use this particular exercise during the Plaintiff's instruction.

13.     Please identify who made the decision to place an automatic outgoing email response for Plaintiff's email address that stated: "I am no longer working in the Office of Associate Dean for Student Affairs Broward."

> I did.

14.     Please state whether you ever reprimanded Terry Mena or A.J. Chase for their handling and/or management of student related issues. In your answer, provide the date of such counseling and the subject matter. To the extent Defendant seeks to assert an objection pursuant to the Family Education Privacy Rights Act, Defendant must provide some means of identification in order to allow Plaintiff to subpoena the relevant records. If no such records exist, Defendant must provide a response.

I never reprimanded identified individuals.

15.     Please state whether any complaints regarding unfair treatment, discrimination or harassment, have ever been made against you.

> The Defendant objects as this interrogatory has no time limits and is otherwise overly broad or fails to obtain information as reasonably calculated to lead to the discovery of admissible evidence.  None.

*charles Brown*

_____
(Signature)

Charles Brown
_____
Print Name

STATE OF FLORIDA
COUNTY OF Broward

    The foregoing instrument was acknowledged before me on this 7 day of march 20 16 , by Charles Brown , who ( ) is personally known to me or (✓) has produced dL , as identification and who did (not) take an oath.

*April R Kadel*
_____
Notary Public, State of Florida

My Commission Expires

APRIL R. KADEL
Notary Public - State of Florida
My Comm. Expires Mar 29, 2016
Commission # EE 184007

**Alexandra Hayes**

| | |
|---|---|
| **From:** | Corey King <cking14@fau.edu> |
| **Sent:** | Friday, April 05, 2013 3:41 PM |
| **To:** | Robin Kabat |
| **Subject:** | [ArcMail Restored] RE: wording |

understood

**Dr. Corey A. King**
*Associate Vice President & Dean of Students*
*Student Services Building (SS # 8), Room 226*
*Florida Atlantic University*
*777 Glades Road*
*Boca Raton, FL 33431-0991*
*Office: 561-297-3542*
*Fax: 561-297-2502*

Confidentiality Notice: This E-Mail is intended only for the use of the Individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute, notify the sender by E-Mail at the address shown above, then delete the original message with any attachments. Thank you for your compliance.

---

**From:** Robin Kabat
**Sent:** Friday, April 05, 2013 11:36 AM
**To:** Corey King
**Cc:** Charles Brown
**Subject:** RE: wording

Hi Corey,

I appreciate your suggestion about wording and I will definitely use this within the letter.  However, I need much more information in order to do the reprimand.  I am meeting with Dr. Brown on Monday morning so perhaps I can get the information at that time.  I need the date that this occurred and an actual synopsis of what happened.  I need to know what Rozalia said in her defense or the reason she gave for making the changes.  Whatever information you can provide will be very helpful.

Thanks

Robin

**The Employee Relations Services Team**
**is here to assist YOU!**
Robin Kabat
AssociateDirector
Department of Human Resources
Florida Atlantic University
(561) 297-3072

Plaintiff Exhibit
Exhibit No.: 7
Name: Brown
Date: 03112016
ESQUIRE

1513

FAU 0001510

**From:** Corey King
**Sent:** Friday, April 05, 2013 11:24 AM
**To:** Robin Kabat
**Subject:** Fwd: wording

Sent from my iPad

Begin forwarded message:

> **From:** Corey King <cking14@fau.edu>
> **Date:** April 4, 2013, 8:27:45 PM EDT
> **To:** Charles Brown <CLBROWN@fau.edu>
> **Subject: wording**
>
> Possible wording for a letter to Dr. Williams:
>
> Failure to follow the practices of administrating the student conduct process by adding language to a "charge letter" that was inconsistent with university procedures resulting in risk and liability to the university.
>
> Corey A. King, D.Ed.
>
> Associate Vice President & Dean of Students
> Student Services Building (SS #8), Room 226
> Florida Atlantic University
> 777 Glades Road
> Boca Raton, FL 33431-0991
> Office: 561-297-3542
>
> Fax: 561-297-2502

1514

Alexandra Hayes

**From:** Corey King <cking14@fau.edu>
**Sent:** Monday, April 08, 2013 8:08 AM
**To:** Robin Kabat
**Subject:** [ArcMail Restored] FW: information

**Dr. Corey A. King**
Associate Vice President & Dean of Students
Student Services Building (SS # 8), Room 226
Florida Atlantic University
777 Glades Road
Boca Raton, FL 33431-0991
Office: 561-297-3542
Fax: 561-297-2502

Confidentiality Notice: This E-Mail is intended only for the use of the Individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute, notify the sender by E-Mail at the address shown above, then delete the original message with any attachments. Thank you for your compliance.

**From:** Corey King
**Sent:** Friday, April 05, 2013 3:38 PM
**To:** Charles Brown
**Subject:** information

Dr. Brown,

Here what I experience...

On March 8, 2013 I received an email from Rozalia Williams indicated that a student had threatening behaviors toward a faculty member on the Davie Campus. She explained that the faculty member did not want the student in the class. She further explain that she had not charged the student and wanted to consult with me. I spoke with Dr. Williams on the phone (March 9th) and explained to her that the student doesn't need to return to class until this matter is resolved. She further explained that Dr. Marin had meet with the student. Dr. Williams informed me that she would proceed with charges based on the threatening behaviors (Notice of Charge Letter dated March 8, 2013). The incident occurred on February 28th.

I later learned that Dr. Williams as placed "wording" in our "Notice of Charge" Letter indicating to the student the following: "In the interim, you may not attend class (SPC 3710) or contact any of the students involved in this matter---verbally or electronically----or by another means. Our practice, concerning the student conduct process, is that we do not place additional wording in the "Notice of Charge" letter. In fact, the practice is that any changes to any student conduct letter must be reviewed by General Counsel.

Failure to follow the practices of administrating the student conduct process by adding language to a "charge letter" that was inconsistent with university procedures resulting in risk and liability to the university.

1515
FAU 0001515

**Dr. Corey A. King**
Associate Vice President & Dean of Students
Student Services Building (SS # 8), Room 226
Florida Atlantic University
777 Glades Road
Boca Raton, FL 33431-0991
Office: 561-297-3542
Fax: 561-297-2502

Confidentiality Notice: This E-Mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute, notify the sender by E-Mail at the address shown above, then delete the original message with any attachments. Thank you for your compliance.

**Alexandra Hayes**

| | |
|---|---|
| **From:** | Robin Kabat <kabat@fau.edu> |
| **Sent:** | Monday, April 08, 2013 9:15 AM |
| **To:** | Charles Brown |
| **Cc:** | Corey King |
| **Subject:** | [ArcMail Restored] williams rozalia reprimand |
| **Attachments:** | williams rozalia reprimand.doc |

Good morning,

Here is the letter as we discussed, ready for your letterhead.  Please let me know if you plan to make any changes.  I hope that I have accurately portrayed the situation.

Thanks

Robin

1

April 8, 2013

Rozalia Williams
3725 S. Ocean Dr.  Apt. 923
Hollywood, FL  33019

Dear Ms. Williams:

This is to advise that you are receiving an official letter of reprimand due to your violation of
Florida Atlantic University's Regulation 5.012, Substandard, unprofessional or incomplete
performance of any responsibility or assigned duty, 5.012(4)(a).

On March 8, 2013, you contacted Dr. Corey King, Associate Vice President and Dean of
Students, regarding an incident that had occurred on February 28, 2013.  You explained that a
student had exhibited threatening behaviors toward a faculty member on the Davie Campus and
that the faculty member did not want the student in class.  You informed Dr. King that you
would proceed with charges based on the threatening behavior.  Dr. King explained to you that
the student doesn't need to return to the class until the matter is resolved.  The proper procedure
in such a situation is for you to contact the Department Chair and then to verbally inform the
student of alternative arrangements for attending class.

In this specific case, rather than verbally instructing the student, and using the standard,
approved language in the "Notice of Charge" letter, you wrote a "Notice of Charge" letter to the
student with considerable alterations to the approved language.  You stated, "In the interim, you
may not attend class (SPC 3710) or contact any of the students involved in this matter –verbally
or electronically—or by another means."  Our practice, concerning the student conduct process,
is that we do not modify or place any additional wording in the "Notice of Charge" letter without
first having the letter reviewed and approved by the General Counsel.

As the Associate Dean for Student Affairs, you had a responsibility to insure that you followed
all of the established policies and practices of the Division of Student Affairs and of the
University.  You modified the "Notice of Charge" letter without permission or guidance.  Your
written instructions to the student were inconsistent with University practice and your actions
created a negative impact on the University community, resulting in risk and liability to the
University.

Ms. Williams, you are a valuable employee in a responsible position, and I sincerely hope that
you give these matters your immediate attention.  You should be aware that a repetition of these
or similar actions may result in more severe disciplinary action against you.

1518

**Signature indicates acknowledgment of receipt of Written Reprimand dated April 8, 2013, and does not indicate agreement with contents of the document.**

_____              _____

Rozalia Williams                                     Date

151A

FAU 0001510

**Alexandra Hayes**

| | |
|---|---|
| **From:** | Eileen Viera <VIERA@fau.edu> |
| **Sent:** | Friday, April 19, 2013 2:09 PM |
| **To:** | Robin Kabat |
| **Subject:** | [ArcMail Restored] RCW letter |
| **Attachments:** | RCW letter.docx |

1

# FAU
## FLORIDA ATLANTIC UNIVERSITY

Sr. Vice President for Student Affairs
777 Glades Road, SU 215
Boca Raton, FL 33431
Tel: 561.297.3988
Fax: 561.297.2501
*www.fau.edu/student*

April 17, 2013

Rozalia Williams
3725 S. Ocean Dr. Apt. 923
Hollywood, FL 33019

Dear Dr. Williams:

This is to advise that you are receiving an official letter of reprimand due to your violation of Florida Atlantic University's Regulation 5.012(4)(a) (Substandard, unprofessional or incomplete performance of any responsibility or assigned duty).

On March 8, 2013, you emailed Dr. Corey King, Associate Vice President and Dean of Students, regarding an incident that occurred on February 25, 2013. You explained that a student had exhibited threatening behavior toward a faculty member on the Davie Campus and that the faculty member preferred that the student not return to class until the matter was resolved. On March 9, 2013, you informed Dr. King that you intended to proceed with disciplinary charges against the student based on the threatening behavior.

Rather than using the approved language in the Division of Student Affairs' standard "Notice of Charge" letter, you sent a modified "Notice of Charge" letter, dated March 8, 2013, to the student containing a considerable revision to the approved language. In your letter, you added the following sentence: "In the interim, you may not attend class (SPC 3710) or contact any of the students involved in this matter –verbally or electronically—or by another means." You did not discuss this revision with me or with Dr. King before sending the letter.

On March 20, 2013, after learning through media reports that the student had been "suspended," Dr. King called you to discuss the matter. You informed him that you did <u>not</u> deem the student to pose a danger of imminent or serious harm to himself or the University community, and that you did <u>not</u> believe an emergency existed that warranted an interim or emergency measure to be taken under FAU Regulation 4.007(9). Despite your belief that no imminent danger or emergency existed, you suspended the student from class SPC 3710 without making any attempts to arrange an academic alternative for him to continue his progress in that class until March 20.

The proper procedure in a situation like this is for you to contact the Department Chair, work with him/her to discuss or develop an alternative academic arrangement for the student to pursue until the matter is fully resolved (such as allowing the student to attend a different class or section with a different professor, to do an independent study or to attend class online), and then verbally inform the student of such alternative arrangement. This process is meant to mitigate an uncomfortable or hostile classroom situation, ensure a smooth transition for the student involved, and prevent an interruption in his/her

1521
FAU-0001521

academic studies until disciplinary proceedings are fully and formally resolved. This process was not followed here.

Additionally, as you know, our standard practice is to obtain the review and approval by the Office of the General Counsel of all official letters involving student disciplinary matters and to obtain that office's approval before modifying such letters. You were aware of this practice, yet you modified the wording in the March 8 "Notice of Charge" letter without discussing it either with me or with the Office of the General Counsel.

Also, your modifications in the March 8 letter were inconsistent with University practice. A written prohibition forbidding the student from returning to class is inappropriate in the absence of an interim suspension or emergency measure under FAU Regulation 4.007(9). This is clear under FAU Regulation 4.007(15)(d), which states that "[t]he student's pre-decision status will remain unchanged pending the appeal determination by the Senior Vice President for Student Affairs or designee (that is, a student shall remain eligible to attend classes and University activities pending the University's final decision in the student conduct proceeding)," except where interim or emergency measures are taken under FAU Regulation 4.007(9). Further, a "gag" order preventing the student from contacting other students is inappropriate and could have, if enforced, prevented him from being able to adequately present a defense in his case.

As the Associate Dean for Student Affairs, you had a responsibility to ensure that you followed all of the established policies and practices of the Division of Student Affairs and of the University. Your actions created a negative impact on the University community, resulting in risk and liability to the University.

Ms. Williams, you are a valuable employee in a responsible position, and I sincerely hope that you give these matters your immediate attention. You should be aware that a repetition of these or similar actions may result in more severe disciplinary action against you.

**Signature indicates acknowledgment of receipt of Written Reprimand dated April 17, 2013, and does not indicate agreement with contents of the document.**


_____                    _____

Rozalia Williams                                   Date



# FLORIDA ATLANTIC UNIVERSITY

Sr. Vice President for Student Affairs
777 Glades Road, SU 215
Boca Raton, FL 33431
Tel: 561.297.3988
Fax: 561.297.2501
*www.fau.edu/student*

April 26, 2013

Rozalia Williams
3725 S. Ocean Drive Apt. 923
Hollywood, FL 33019

*Hand delivered*
CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Additional copy sent by regular US Mail

Employee ID # Z00010451

Dear Dr. Williams:

This letter serves as your official Notice of Separation from your position of Associate Dean Student Affairs, Broward Campus, at Florida Atlantic University, effective today, Friday, April 26, 2013. Florida Atlantic University Regulation 5.008, provides for a six month notice and therefore your appointment will end on October 25, 2013.

For the period of your six month notice you will be assigned to work for Dr. Corey King, Associate Vice President for Student Affairs and Dean of Students, working out of the Campus Recreation Office on the Boca Raton Campus. You are scheduled to report to Dax Kuykendall, Director of Campus Recreation, at 8:30 a.m. Monday morning, April 29, 2013. Mr. Kuykendall will assist in getting you situated in your new location. However, during this notice period you may be reassigned to another work location at Florida Atlantic University. If reassignment does take place, you will be notified under separate cover.

Please be aware that you may be eligible to continue some insurance coverages following your last day of employment. For information concerning the continuation of your insurance coverages and the status of other benefits you may have, including your leave benefits, please contact the Benefits Office at (561) 297-3071.

If you have any questions, you may contact Ms. Robin Kabat, Associate Director of Human Resources, at (561) 297-3072.

Sincerely,

Charles Brown
Senior Vice President for Student Affairs

cc:    C. King
       Personnel File

*An Equal Opportunity/Equal Access Institution*

Plaintiff Exhibit
Exhibit No.: 8
Name: Brown
Date: 03/11/2016
ESQUIRE

FAU-0001186

Signature indicates acknowledgment of receipt of Separation Notice dated April 26, 2013, and does not indicate agreement with contents of the document.

_____                    _____
Rozalia Williams                                    4/26/13
                                                           Date



Equal Opportunity Programs
777 Glades Road
Boca Raton, FL 33431
tel: 561.297.3004
fax: 561.297.2402
www.fau.edu

Decebmer 9, 2013

Dr. Rozalia Williams
3725 South Ocean Drive
Hollywood, FL 33019

RE: Dr. Rozalia Williams - FAU
13-EOP-12

Dear Dr. Williams,

The Equal Opportunity Programs office has completed its investigation. All necessary steps have been taken by EOP pursuant to Regulation 5.010. The evidence discovered through our investigation did not support the allegations of discrimination based on your age, sex, marital status and race. The evidence also did not support that you were retaliated against for opposing or participating in a protected activity. The EOP findings summary is attached. This letter has the effect of closing our investigation. However, you have 10 (ten) days from receipt of this letter to request reconsideration of your complaint. Regulation 5.010 includes:

- The complainant may request reconsideration of the finding in the EOP report.
- The party must submit their request in writing to the EOP director within 10 (ten) days of receipt of the EOP final report (this letter).
- Reconsideration must be in writing and should specify the basis of the request.
- Typically, reconsideration will be granted only in cases where relevant evidence was not reviewed and/or new evidence is available.

If you decide to make a reconsideration request, please forward the request directly to my attention.

If there are questions please give me a call at (561) 297-3005.

Sincerely,

Paula Behul

Paula Behul, Director
Equal Opportunity Programs

Plaintiff Exhibit
Exhibit No.: 9
Name: Brown
Date: 03/11/2016
ESQUIRE

:PL000401

Attachments:  Report
              Regulation 5.010

c:   Dr. Charles Brown, Senior V.P. for  Student Affairs
     EOP file

:PL000402

Rozalia Williams – Division of Student Affairs
13-EOP-12

## SUMMARY OF COMPLAINT

On September 13, 2013, Dr. Rozalia Williams filed a complaint with the Equal Opportunity Programs office at Florida Atlantic University alleging that she was discriminated against because of her age, sex, marital status, and race. Williams additionally alleges she was retaliated against for not signing a written reprimand which led to her termination. Williams also asserts that her termination occurred one day prior to a scheduled meeting with the Faculty Senate investigating a student-related incident. Williams asserts she was terminated because she refused to take responsibility for the student code of conduct incident that was handled inappropriately.

Williams, age 60, asserts she was discriminated against for the following reasons: (1) she is over 40 years of age, (2) she is a single woman, and (3) due to her race, which is African American (AA). Williams alleges she was discriminated against by, then FAU President, Dr. M. J. Saunders, a white female (WF), Dr. Corey King, a married African American male (AAM), age 44 years of age, Associate Vice President and Dean of Students, and Dr. Charles Brown, an African American male (AAM), age 62, Senior Vice President for Student Affairs, and Dr. King's immediate supervisor (**Attachment 1**).

## Findings of Investigation

Chronology of Williams's Employment:

On October 12, 2001, Rozalia Williams-Davis was hired as the Assistant Director of Multicultural Affairs on the Davie campus (**Attachment 2**).

On April 1, 2004, Williams' position was reclassified to an Associate Director of Multicultural Affairs for the Broward Campuses (**Attachment 3**). At that time, Williams reported to Marion Merzer (WF), Associate Dean of Student Affairs, Broward Campuses.

Williams was promoted to the Director of Multicultural Affairs for the Boca campus effective December 29, 2007 (**Attachment 4**). Williams' immediate supervisor at the time she was hired as the Director of Multicultural Affairs, Boca Campus was Brown.

:PL000403

On September 2, 2008, King was hired as the Associate Vice President and Dean of Students and was given the responsibility of supervision over the Multicultural Affairs office and Williams' position.

On June 1, 2010, Williams was promoted to the position of Associate Dean of Student Affairs for the Broward campuses (**Attachment 5**). With that change in title, Williams' immediate supervisor was, once again, Brown.

Effective on April 26, 2013, Brown presented Williams with a six-month notice that her appointment would end on October 25, 2013 (**Attachment 6**).

Employment Experiences:

Corey King, Ph.D., Associate Vice President and Dean of Students began working for Student Affairs on September 2, 2008. At the time, King was responsible for supervising the following areas; Student Union, Campus Recreation, Student Conduct, Civic Engagement, Student Government, Student Involvement and Leadership, Student Media, Office of Students with Disabilities (OSD), International Student and Scholar Services (ISSS), New Student and Owl Family Programs and Multicultural Affairs.

Within six months of King's hiring, on March 5, 2009 Williams met with Paula Behul, Equal Opportunity Programs Director, to discuss concerns she had about King's supervision. Williams indicated to Behul that King was not used to working with "a strong Black woman" and questioned his supervision. Williams did not wish to file a complaint at the time so Behul suggested that Williams discuss her concerns about King with Brown.

In an investigatory conversation with King, he reported that Williams continued to request to have direct access to Brown and routinely ignored the formal reporting line to King. As such, she did not complete assignments given to her by King. On-going teamwork efforts were diminished due to Williams' lack of cooperation and collaboration with her supervisor.

## Associate Dean Broward Campuses

According to both King and Brown, when Williams was the Associate Dean of the Broward campuses, she became increasingly difficult to manage when organizational changes occurred. She found it difficult on many levels to establish sound and productive working relationships with supervisors, peers and students. One particular example was when selected student affairs offices were moved from her control/supervision to the Boca Campus -- a change implemented by Brown. Specifically, the Registered Nurse on the Davie campus changed reporting from Williams to the Student Health Services Director on the Boca campus; another is the change of the Associate Director of Counseling Center on the Davie campus reporting to the Counseling Director on the Boca campus. Since both positions had previously reported to Williams, she did not want to give up control and supervision of the two positions. Williams was visibly angry

2

about these decisions and did not restrain herself when expressing those feelings to others within the division of Student Affairs.   Further discussions with King and Brown indicate that Williams' continued dissatisfaction and disagreement with processes, the management style and hierarchy within the Division of Student Affairs, eroded positive working relationships with them and others within the division.

One particular example of further malcontent on the part of Williams that impacted her ability to receive and carry out supervisory directives was the request to develop the plans to install a simple canopy structure over the existing patio on the Davie campus. After discussion with the Student Affairs Senior Leadership team (reviewing several options), of which Williams participated, the collective decision was to move ahead with the simplest and least costly solution to expand and cover the existing student union patio in Davie. Williams disregarded the directive of Brown by proceeding independently to commission program design specifications for an entirely new pavilion, the cost of which approximated $80,000. This represented an expense that was not authorized by Brown and the University was invoiced for this amount. Williams demonstrated willful disregard of the consensus decision constituting insubordination.

Another example of Williams' disregard for supervisory directives as told to Behul by King and Brown was the King decision on how to handle charging students the cost of an unreturned book borrowed from the Multicultural Affairs office Book Loan Program. Williams inserted herself into processes not under her purview. Williams disagreed with this process and at staff meetings publicly made statements that created tension and demonstrated overt disagreement with her direct supervisors.

Finally, there were instances when parents contacted the Equal Opportunity Program office directly to express their dissatisfaction with Williams and her communication style and inability to establish positive relationships with the students. At the time of those phone calls, EOP office staff directed the callers to contact King or Brown since the concerns were primarily about supervisory matters and undesirable employee behavior.

In summary, the Williams' work history after her 2010 promotion, according to her supervisors, was one of turmoil, disrespect, and overt disregard for hierarchy and authority. Williams' also had difficulty with some students and with some of her colleagues. Her demeanor and style was not one that engendered collaborative working relationships.

<u>Student Conduct Code Incident</u>

A well-documented and public occurrence pertaining to a Multicultural Communications course occurred on the Davie campus on Monday, February 25, 2013. A police report was taken and the issue was referred to Dr. Naomi Marin, Chair of the Department of Communications. Marin met with the student on February 27, 2013 and Williams met with Marin on February 28, 2013. Williams indicated that she was in charge of the student conduct policy and she was taking the lead in the investigation.  This was not appropriate.  Shown below is the section of the Student

3

Code of Conduct that indicates all decisions pertaining to student conduct must be handled by the Dean of Students (King).

> **Regulation 4.007, Student Code of Conduct: (5) Violations of the Code of Conduct states:** Any of the following actions constitute conduct for which a student, a group of students, or a student organization may be subject to student conduct/disciplinary action:
>
> **(n)** Acts of verbal, written (including electronic communications or internet activity) or physical abuse, threats, intimidation, harassment, coercion, or other conduct which threaten the health, safety or welfare of any person.
>
> **(9)** Emergency Measures; **(3)** If the Dean of Students determines that other interim measures are appropriate to protect the health, safety, or welfare of the student or the University Community, the Dean of Students may: **a.** restrict or bar attendance of any or all classes; **b.** restrict or bar access or contact with individuals in the University Community **(Attachment 7).**

Two weeks later, on March 10, 2013, Williams talked with King by telephone concerning the student conduct code process. **(Attachment 8).** Williams advised King that she had mailed a standard notice letter to the student on March 8, 2013 **(Attachment 9)** and she failed to advise King during their conversation that she had modified the standard letter to the student and inserted language prohibiting the student's attendance in the class. Williams took it upon herself to enact Emergency Measures without the consultation or support of her supervisors, as required in the regulation set forth above. The decision to prohibit the student's attendance in the class is one that requires due process, and several key administrators must approve after a consultative process.

The unauthorized revised letter to the student also provided the student with access to other classes at FAU. On March 20, 2013, Williams discussed her actions to place the student on suspension from one class and not another with King. She felt that barring the student from his Boca Raton class would be excessive. However, Emergency Measures had been cited in the Notice of Charge letter forwarded to the student on March 8, 2013 barring the student from class and contact with anyone in the class. Barring the student from one class and not restricting the students attendance in the second class is an inappropriate and inconsistent application of Emergency Measures, according to King. The March 8, 2013 Notice of Charge letter forwarded by Williams to the student incorporates Emergency Measures and states: In the interim, you may not attend class (SPC 3710) or contact any of the students involved in the matter-verbally or electronically – or by any other means. **(Attachment 10).**

The finding of this investigation supports that the Student Code of Conduct process was not appropriately executed by Williams. Williams improperly chose to manage the process independent of any higher authority. Williams' explanation of the events surrounding the student incident, while flawed, explains why she made certain decisions; however she did not

4

have the authority to act unilaterally within the student code of conduct process (**Attachments 8, 9 & 10**). Williams assumed an inappropriate level of authority during this process which further supports prior findings of insubordination, lack of attention to supervisors' authority and proper chain of command.

### Discrimination based on being a Single female, Sex (female), Age (60) and Race (African American)

In a separate allegation, Williams (60 years of age) asserts that she was treated differently by Brown (62 years of age) because she is a single female and King (44 years of age) is a married man with a family.

The findings show that King is not a comparator of Williams' because he was her supervisor, had authority over her and therefore, was not similarly situated to Williams. Furthermore, Brown is a single male and is also not similarly situated to Williams.

There is also no evidence that Williams was treated differently because she is single or female.

Evidence does not support that King and Brown, who are both African American males, treated Williams differently due to her gender (female) nor did they present her with a non-reappointment letter due to her race (African American).

Williams has presented no evidence to support her allegation that she was discriminated against because of any protected class.

### Retaliation

In order to support a claim of retaliation, Williams must show that 1) she engaged in a protected activity; 2) an adverse employment action occurred; and 3) there is a causal connection between her participation in the protected activity and the adverse employment action. The evidence shows that Williams did meet with the EEO Director in March 2009 (over 4 years before her Notice of Separation) to discuss concerns about King's alleged disrespectful treatment of her. Williams did not file a complaint. The EEO Director suggested Williams discuss her concerns with Brown, King's immediate supervisor.

Brown stated he met with Williams and King in a joint meeting and reiterated that King was her supervisor and he had the right to assign her tasks and duties and that he had the right to request updates and follow-up on the status of those assignments. Brown indicated that he thought the matter had been resolved after this meeting. Brown also stated he had talked with Williams about being a team player and the need to work with other staff to resolve issues instead of pursuing actions to resolve issues unilaterally.

Brown also continued to communicate to Williams that he routinely asked King to follow-up on assignments in his stead and that she would be required to respond to King's requests for

5

:PL000407

information.  This investigation did not show evidence that Williams was adversely affected by the meeting with King and Brown and no adverse action occurred after the meeting where her roles and responsibilities were discussed.

In fact, over a year after the meeting with King and Brown, Williams was promoted to the position of Associate Dean of the Broward campuses.  The Associate Dean position reported directly to Brown.  Williams maintained this position for 2 years and 10 months.  Williams did not suffer any harm after communicating her discomfort with King's supervision.  After being promoted Williams reported directly to Brown.  There is no evidence of any adverse treatment of Williams and she suffered no harm.  No other EOP complaints were filed by Williams.

An example of the cooperative working relationship fostered on the part of Brown is shown by his approval of her numerous outside employment activities and his flexibility to work around her numerous outside business engagements.  The proper paperwork was completed for the time period from January 2002- March 2013 (**Attachment 11**).

In addition the record shows that Williams received additional compensation from other programs within the university from 2008 – 2010 (**Attachment 12**).

Brown's approvals of Williams' outside employment and additional compensation requests further indicate there was no attempt to retaliate against Williams for her behavior or in retaliation for having opposed a protected activity due to discussions with Brown and King concerning their need to develop a cooperative working relationship.

## Conclusion

Williams' allegations of being discriminated against and treated differently by King because of her sex, age and race are unsubstantiated.  Williams was unable to accept King's supervisory role over her and refused to take directives from him even after discussions and instruction from Brown, King's supervisor.

The investigation showed that Brown had continuing concerns about Williams' inability to take directives from her immediate supervisor, her misinterpretation of the student code of conduct process, her need to have the last word during staff meetings, as well as her need to always demand and attempt to get her way.  Brown emphasized that in reviewing Williams' performance, her inability to be a team player, her unauthorized independent decision-making actions, her inability to be a responsive staff member to her supervisor's directives, and her difficult interactions with colleagues and students were extremely important to him as he reviewed Williams' status within his Student Affairs area.  Brown added that complaints from staff, students and parents on how they had been treated led to his final decision to not renew her appointment.  The final straw leading to the Notice of Separation was Williams' gross mismanagement of the student discipline matter in March 2013.

6

Brown added that his decision not to renew the appointment was completely unrelated to a meeting Williams was scheduled to have concerning the Faculty Senate's investigation of the student conduct matter since he had no knowledge of the faculty senate meeting.

There is no evidence that Williams was discriminated against because of her sex, age, marital status or race. There is also no supporting evidence that Williams was retaliated against for opposing or participating in a protected activity.

There is no evidence that there was a violation of Regulation 5.010, Anti-Discrimination and Anti-Harassment.

This concludes the Equal Opportunity Programs investigation of this complaint.

*Paula Behul*

Paula Behul, Director
Equal Opportunity Programs

:PL000409