# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 15-60621-CIV-GAYLES/TURNOFF

ROZALIA WILLIAMS,

    Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY,
BOARD OF TRUSTEES, CHARLES L.
BROWN, an individual, and
COREY KING, and individual,

    Defendants.
_____/

# ORDER

**THIS CAUSE** comes before the Court upon Defendant Florida Atlantic University Board of Trustees's Motion for Summary Judgment [ECF No. 74] and Defendant Charles L. Brown's Motion for Summary Judgment [ECF No. 75]. The Court has carefully reviewed the Motions, the record, argument of counsel, and the applicable law. For the reasons set forth below, the Motions are granted.

# BACKGROUND

Plaintiff Rosalia Williams ("Plaintiff"), a 63 year-old black woman,[1] brought this action against Defendants Florida Atlantic University Board of Trustees ("FAU"), Charles L. Brown ("Brown"), and Corey King ("King") (collectively "Defendants") alleging claims for race, gender, and age discrimination and for retaliation. All of Plaintiff's claims relate to her termination following a heavily publicized student incident at FAU.

---

[1] Plaintiff was 59 years old during the relevant time period.

## I. Plaintiff's Employment History at FAU

In 2001, Plaintiff began working at FAU as the Assistant Director of Multicultural Affairs for FAU's Broward Campuses. FAU later promoted her to Director of Multicultural Affairs and Pre-College Programs at FAU's Boca Raton Campus. Plaintiff reported to Brown, the Vice President of Student Affairs. In 2009, she was hired as FAU's Vice President of Students Affairs and Dean of Students. A year later, FAU promoted Plaintiff to Associate Dean of Students for FAU's Broward Campuses. Plaintiff replaced David Bynes ("Bynes"), a black man, who had been serving as interim Associate Dean. By 2013, there were three associate deans at FAU, Plaintiff, Terry Mena ("Mena"), a 42 year-old Hispanic man, and A.J. Chase ("Chase"), a 48 year-old white woman.

## II. Code of Conduct

FAU's Code of Conduct governs the student disciplinary process and sets forth potential conduct violations, including conduct that threatens the health, safety, or welfare of individuals or the university community. Under the Code, the disciplinary process begins when a Dean, Associate Dean or Assistant Dean ("designees") receives a complaint that a student has violated the Code. Upon receipt of the complaint, the designee has three options: (1) set an investigative conference with the student to gather information; (2) issue a notice of charges and set a student conference; or (3) implement emergency measures. If the designee proceeds under the first option, there is an investigation and potential review either by a hearing officer or the Student Conduct Board. The results of the investigation will determine whether FAU ultimately issues a notice of charges against a student.

If the complaint presents a situation that poses an imminent threat of harm to the student or others or affects the health, safety, or welfare of the student, the designee can implement emergency measures. Emergency measures include interim suspension, restriction of access to a

particular class or campus, or restriction of contact with a particular individual. Although King, the Associate Vice President and Dean of Students, testified that only the Dean could implement emergency measures, the Code's plain language permits any designee to implement emergency measures. In addition, while the term emergency appears to contemplate the need for immediate action, particularly in light of the purported threat to safety, the Code does not have a provision limiting the time for a designee to implement emergency measures. King and Joanna Ellwood ("Ellwood"), the Associate Dean of Students and Director of Student Conduct, both testified that, in practice, the designee should implement emergency measures as soon as possible.

FAU's Department of Student Affairs has draft template letters for each stage of the disciplinary process, which are updated upon the advice of FAU's general counsel's office. King, Brown, and Ellwood all contend that Plaintiff was not permitted to alter the templates without consulting the Dean and the general counsel's office. The Code is silent on this issue and Plaintiff has presented evidence that other deans modified templates without prior approval.

### III. The Incident[2]

On February 25, 2013, Ryan Rotela ("Rotela") objected to an exercise in his Multicultural Communications class after Professor Deandre Poole ("Poole") asked students to write J-E-S-U-S on a piece of paper and decide whether they felt comfortable standing on the paper. Following class, Rotela confronted Poole and allegedly threatened to physically assault him. On February 26, 2013, Plaintiff received the security report regarding the Rotela incident. She then met with Dr. Noemi Marin, who had already met with Rotela, Andrew Cuthbert, a

---

2 In her Response to Defendant's Statement of Material Facts and Additional Disputed Facts in Support of Her Response in Opposition to Defendant's Motion for Summary Judgment [ECF No. 87], Plaintiff relays her recollection of Brown's comments and/or actions prior to the Rotela incident. As detailed in this Court's order on the motion to dismiss, the actionable timeframe for Plaintiff's claims began on February 26, 2013. [ECF No. 59]. King's alleged animus towards educated black women and/or Brown and King's purported insistence that because Plaintiff, Brown, and King were all black they should get along relate to events occurring before February 26, 2013. As such, the Court will not consider them. The Court notes, however, that these isolated comments do not otherwise support Plaintiff's claims.

student witness to the event, and with Poole. On Thursday, February 28, 2013, Plaintiff sent Rotela an investigation conference letter.

Plaintiff first met with Rotela on March 7, 2013. In her deposition, Plaintiff testified that Rotela was agitated and refused to take responsibility for his actions. Rotela denied ever threatening Poole. Plaintiff again communicated with Poole, who requested that Rotela not return to class.

On March 8, 2013, Plaintiff emailed King asking to discuss a student conduct case, but did not relay the name of the student, details about the incident, or that she was going to issue charges or emergency measures. The same day, before hearing back from King or consulting with the general counsel's office, Plaintiff emailed Rotela a Notice of Charges which included emergency measures barring him from Poole's class and from contact with any student in Poole's class. In drafting the Notice of Charges, Plaintiff modified FAU's template letter. On March 10, 2013, Plaintiff discussed the Rotela incident with King.

Plaintiff attempted to schedule a hearing for Rotela, but, before the hearing could take place, Rotela hired an attorney and contacted the media. The media coverage of the incident focused on the classroom exercise and characterized Rotela's discipline as punishment for making a religious objection to an offensive assignment. This prompted an angry response from members of the community and a substantial amount of negative national media attention. FAU eventually reached an agreement with Rotela and dropped the charges.

Brown initially informed Plaintiff that she would be reprimanded for what he believed to be a failure to follow the Code's procedures. Plaintiff indicated that she would oppose any reprimand. Brown never issued a written reprimand. On April 26, 2013, FAU terminated Plaintiff. FAU replaced Plaintiff with William Hortsman, a white man who is approximately 5 years younger than Plaintiff.

### IV. The Other Deans' Conduct

Plaintiff asserts that Mena and Chase, in their capacity as associate deans, issued charges that included emergency measures.[3] There is no written record of Mena or Chase implementing emergency measures. In addition, Brown, King, and Ellwood have all stated that they were unaware of Mena or Chase ever implementing emergency measures.

On at least two occasions, Plaintiff's replacement, Hortsman, issued charges more than a week after the reported improper student conduct. Hortsman did not implement emergency measures. It is undisputed that neither Mena, Chase, nor Hortsman ever issued charges relating to a nationally publicized student incident.

### V. Plaintiff's Participation in DROP

Plaintiff participated in the Florida Deferred Retirement Option Program ("DROP") retirement system. At the time of her termination, she had three more years until she retired under DROP. Plaintiff claims that during the relevant time period, FAU began downsizing its programs and did not renew the contracts and/or forced the resignation of four other DROP participants, who were replaced by younger employees. Plaintiff does not provide any evidence relating to the statistical significance of the four other DROP participants, including how many DROP participants remained employed at FAU following their forced retirement.

### VI. Procedural History

---

3     Chase's Declaration is the subject of FAU's Motion to Strike Third Party Unsworn Declarations [ECF No. 100]. The Court, however, finds that Chase's unsworn declaration, even if accepted as true, does not affect its ruling, and therefore declines to determine, on its merits, the Motion to Strike.

Plaintiff filed her Second Amended Complaint on September 25, 2015, asserting claims for gender, race, and age discrimination and claims for retaliation [ECF No. 35]. On March 21, 2016, the Court issued an order limiting the time-period for Plaintiff's claims to the "Rotela incident" and dismissing Plaintiff's claims against King and Brown for retaliation and age discrimination. [ECF No. 59]. On June 23, 2016, Plaintiff voluntarily dismissed her claims against King. [ECF No. 69]. On June 27, 2016, FAU and Brown each moved for summary judgment as to all remaining claims.

## ANALYSIS

### Standard of Review

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016). The Court must construe the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

I.  **Plaintiff's Race and Gender Discrimination Claims**

Plaintiff contends that Defendants terminated her because of her race and/or her gender. Title VII, the Equal Protection Clause of the Fourteenth Amendment, and the Florida Civil Rights Act ("FCRA") all prohibit discrimination on the basis of race and gender. *See* 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1983; Fla. Stat. § 760.10 *et seq.* The Court applies the same legal analysis to Title VII, § 1983, and FCRA claims that are based on the same set of facts. *Quigg v. Thomas County School Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (Title VII and § 1983); *Hampton v. City of South Miami*, 186 Fed. App'x. 967 n. 2 (11th Cir. 2006) (Title VII and FCRA).

A.  **Legal Framework**

Race and gender discrimination claims can be categorized as either single-motive or mixed-motive "claims." *Quigg*, 814 F.3d at 1235. A single-motive, or "pretext," case is one where an illegitimate reason, such as race or gender, was the sole motivation for the adverse employment decision. *Id.* A mixed-motive case is one where both legitimate and illegitimate reasons motivated the employer's adverse employment decision. *Id.* Mixed-motive and single-motive discrimination are not "distinct causes of action" but rather "serve as alternative causation standards for proving discrimination." *Quigg*, 814 F.3d at 1235 n.4.

A plaintiff can establish single-motive and mixed-motive discrimination through direct or circumstantial evidence. *Id.* The Court analyzes single-motive claims based on circumstantial

7

evidence under the familiar *McDonnell Douglas* burden-shifting framework.[4] *Id.* at 1237 (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)). First, the plaintiff/employee must establish a prima facie case of discrimination. The burden then shifts to the defendant/employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant is able to do so, the burden shifts back to the plaintiff to show that the defendant's proffered legitimate reason was merely pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-805. The plaintiff must ultimately show that the "true reason" for the employer's adverse employment action was to discriminate against her. *Quigg*, 814 F.3d at 1237 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-53 (1981)).

The Court's analysis for mixed-motive claims based on circumstantial evidence is different. In *Quigg*, the Eleventh Circuit adopted the mixed-motive framework set forth by the Sixth Circuit in *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008). *Id.* at 1239. Under the *Quigg/White* framework, the Court asks "whether a plaintiff has offered 'evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action.'" *Id.* (quoting *White*, 533 F.3d at 400).

Plaintiff filed her Amended Complaint on September 28, 2015. At that time, while other circuits had set forth a specific framework for mixed-motive claims that differed from the *McDonnell Douglas* burden shifting framework, the Eleventh Circuit had yet to address the issue. On February 22, 2016, after the parties had briefed Defendants' motions to dismiss but before this Court ruled, the Eleventh Circuit issued its ruling in *Quigg*. In its Order on Defendants' motions to dismiss, this Court raised the possibility that *Quigg* might apply to Plaintiff's claims.

---

4   Plaintiff does not proffer any direct evidence of discrimination.

Now, in response to Defendants' motions for summary judgment, Plaintiff raises, for the first time, a mixed-motive theory of discrimination. The Court finds Plaintiff's attempt to recast her claims untimely and without merit.

First, the law in this Circuit, while not entirely clear, appears to suggest that it is too late for Plaintiff to assert her claims under a mixed-motive theory. *See Bartels v. Southern Motors of Savannah, Inc.*, No. 16-11958, 2017 WL 894452 at *5 (11th Cir. March 7, 2017) (refusing to consider whether mixed-motive framework applied to FMLA retaliation claim when raised for the first time on appeal); *McCalister v. Tennessee Valley Authority Board of Directors*, No. 3:14-cv-01569-HGD, 2017 WL 734504 at *23 n.6 (N.D. Ala. Feb. 24, 2017) (refusing to consider mixed-motive theory of discrimination when raised for the first time in the plaintiff's opposition memorandum to the defendant's motion for summary judgment). Indeed, "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *McCalister*, 2017 WL 734504 at *23 n.6 (quoting *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314-15 (11th Cir. 2004)).

More importantly, Plaintiff's Amended Complaint does not allege that she was terminated for both legitimate and illegitimate reasons. Although she uses "mixed-motive" terminology in response to the motions for summary judgment, she repeatedly asserts that she did not violate FAU's policies and procedures and that, therefore, Defendants had no legitimate reason to fire her. Plaintiff's insistence that she was fired solely because of an illegitimate reason precludes her from proceeding under a mixed-motive theory. *See Johnson v. Young,* Case No. 4:15cv543-RH/CAS, 2016 WL 4536406 at *3 (N.D. Fla. Aug. 30, 2016) ("[Plaintiff] asserts that the [defendant] acted solely from an improper motive: race. This is not a mixed-motive case."). However, because the result is the same, the Court will analyze Plaintiff's claims using both frameworks. *Id*. (finding that under the circumstances of that case "the answer will be the

same to the analytically separate questions of whether race was a motivating factor in the [defendant's] demotion decision and whether the [defendant's] proffered reason for the demotion was pretextual.").

### B. McDonnell Douglas Single Motive Framework

Plaintiff argues that FAU terminated her based on her race and/or her gender. As set forth above, the Court evaluates these claims under the *McDonnell Douglas* framework.

#### 1. Prima Facie Case

Plaintiff's first step under the *McDonnell Douglas* framework is to "make out a prima facie case of discrimination that 'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *Flowers v. Troup County*, 803 F.3d 1327, 1336 (11th Cir. 2015) (*quoting Burdine*, 450 U.S. 248, 254). Plaintiff must show that she (1) was a member of a protected class; (2) was qualified for the position; (3) experienced an adverse employment action; and (4) received less favorable treatment than similarly situated employees outside of her protected class. *Id.* While the burden to establish a prima facie case is "not onerous . . . it does not . . . relieve Title VII plaintiffs of their burden to put forth evidence of discrimination on the basis of race [or gender]." *Flowers*, 803 F.3d at 1336 (internal citations omitted).

It is undisputed that Plaintiff is a member of a protected class (race and gender), that she was qualified for her position, and that she suffered an adverse employment action (termination). The parties do, however, disagree on whether Plaintiff received less favorable treatment than similarly situated employees outside of her protected class. In particular, the parties dispute whether there are any similarly situated comparators.

"In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." *MacPherson v. Univ.*

*of Montevello*, 922 F.2d 766, 774 n.16 (11th Cir. 1991). The Court must evaluate the qualifications of the purported comparators as well as their conduct and the context in which they acted to determine if they are similarly situated to Plaintiff. *See Nix v. WLCY*, 738 F.2d 1181, 1186 (11th Cir. 1984); *Burke-Fowler v. Orange Cty, Fla.*, 447 F.3d 1319, 1325 (11th Cir. 2006).

Plaintiff argues that Mena and Chase were similarly situated to her yet were not terminated.[5] The Court finds, however, that neither Mena nor Chase were similarly situated to Plaintiff. While they were both associate deans, wrote similar notices of charges,[6] and modified templates, they were markedly different from Plaintiff in one important respect. They did not handle a heavily publicized student incident. *See* Plaintiff's Response to Defendant's Statement of Material Facts [ECF No. 87 ¶ 29 ("Terry Mena and AJ Chase did not handle any student conduct cases that were publicized by the media.")].

The media coverage of the Rotella incident is a game changer. The context in which Mena and Chase issued notice of charges was markedly different from the highly charged environment in which Plaintiff implemented emergency measures against Rotella. *See Nix*, 738 F.2d at 1186 (finding no prima facie case where the plaintiff and his comparator's "circumstances were different."); *Burke*, 447 F.3d at 1325 ("Different types and degrees of misconduct may warrant different types and degrees of discipline."); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and disciplined in different ways.").

---

5    Chase is a woman and therefore cannot be considered as a comparator for Plaintiff's gender discrimination claim. *Lewis v. Chattahoochee Valley Community College*, 136 F. Supp. 2d 1232, 1237 (M.D. Ala. 2001) (granting summary judgment in favor of the employer on plaintiff's gender discrimination claim because the comparators identified by the plaintiff were also female).

6    There is a factual dispute as to whether Mena or Chase ever issued similar notice of charges and/or implemented emergency measures.

Plaintiff handled a very sensitive student matter that caused a very negative public reaction. Her comparators did not, and, therefore, are not similarly situated to Plaintiff. *See Jackson v. Rooney*, Case No. 13-cv-1706 (VAB), 2016 WL 4769717 at *12 (D. Conn. Sept. 13, 2016) (finding comparators were not similarly situated to plaintiff in part because comparators did not "receive[] extensive news coverage of their alleged wrongdoing that could have eroded public trust."). Accordingly, the Court finds that Plaintiff fails to establish a prima facie case of race or gender discrimination.

### 2. Legitimate Interest and Pretext

Despite finding that Plaintiff has not established a prima facie case, the Court will complete the remainder of the *McDonnell Douglas* analysis because it does not change the Court's finding that Defendants are entitled to summary judgment. Defendants state that Plaintiff was fired because she violated FAU's policies and procedures in her handling of the Rotela incident. In particular, Defendants contend that, "[f]aced with increasing pressure from prominent public officials and the national media to answer for the perceived suspension of a student for voicing his religious objections, Dr. Brown decided to separate Plaintiff's employment." [ECF No. 108 at pg. 11]. Terminating an employee for the perceived mishandling of a "public relations catastrophe" is a legitimate non-discriminatory reason. Therefore, the burden shifts back to Plaintiff to show that Defendants' legitimate reason was mere pretext.

Plaintiff contends that (1) she did not violate any of FAU's rules or policies and (2) that her comparators engaged in similar conduct and were not disciplined in the same manner. She argues, therefore, that Defendants' legitimate reason is mere pretext for discrimination. The Court disagrees.

12

First, it is immaterial that Plaintiff did not formally break any of FAU's rules or procedures. An employer may fire an employee for any reason so long as the reason is not due to unlawful discrimination. "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999); *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Indeed, an employer is under no obligation to be fair and has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Nix*, 738 F.2d at 1187 ("stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve" even though reason "might seem unfair."). *See also Carroll v. Office Depot, Inc.*, Case No. 2:13-cv-00414-AKK, 2015 WL 1487098 at *5 (N.D. Ala. March 30, 2015) ("[A]nti-discrimination laws do not prohibit employers from treating employees unfairly.").

The record is unclear as to whether Plaintiff formally violated a written rule or policy. The record does, however, support a finding that FAU, Brown, and King believed that Plaintiff exceeded her authority and did a poor job in handling the Rotella incident. Indeed, Plaintiff's direct involvement in this highly publicized event did not cast a good light on FAU. It is possible that FAU even wanted to make her a scapegoat for the negative publicity. While Defendants actions may be unfair, arbitrary, and even mean-spirited, there simply is no evidence that Plaintiff's race or gender influenced Defendants' actions. *See Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001) ("Responding to media attention and the resulting perceived public pressure to take action against a child molester [and employee] may or may not be laudatory traits in a public board, but it is race neutral."); *Price v. United*

*Technologies Corp.*, Case No. 99-8152-CIV-Ferguson, 2000 WL 33538488 at * 5 (S.D. Fla. Aug. 16, 2000) ("As [Plaintiff] contends he may well have been made the scapegoat because the serious technical failure occurred on his watch. The Court will not second-guess an employer's reasonable assessments as to who is responsible when things go bad in business."); *Darr v. Telluride, Colo*, 495 F.3d 1243, 1258 (10th Cir. 2007) (affirming summary judgment for defendant on a terminated public employee's substantive due process claim and holding that "[w]e can think of only a few better reasons to fire an employee than the fact that the employee can no longer perform his job duties because his allegedly hard-nosed conduct generated a poisonous public reaction.").

Plaintiff also argues that Mena, Chase, and Hortsman's more favorable treatment for similar actions proves pretext.[7] The Court disagrees. The similarly situated prima facie case inquiry and the pretext inquiry "are not hermetically sealed off from one another." *Coleman v. Donahoe*, 667 F.3d 835, 857-58 (7th Cir. 2012). Often "the prima facie case and the pretext analysis overlap," and "the similarly situated inquiry dovetails with the pretext question." *Id.* at 858. As detailed in the prima facie case discussion, Plaintiff's comparators did not engage in similar conduct because they did not handle a student event that turned into a media circus. *See Nix*, 447 F.3d at 1325; *Holifield*, 115 F.3d at 1562.

Finally, Plaintiff argues that surrounding circumstances support an inference of pretext. In support Plaintiff points to Hortsman, a white man, replacing her and receiving a promotion over Bynes, a black man. The Court finds Plaintiff's argument is without merit. Plaintiff simply has not shown that Defendants' actions were motivated by anything other than Plaintiff's poor handling of the Rotella incident. Accordingly, judgment on Plaintiff's race and gender claims

---

[7] Although not labeled a comparator, Plaintiff argues that Hortsman issued a similar notice of charges and was not terminated.

14

must be entered in favor of the Defendants.[8]

### C. Mixed-Motive Framework

As detailed above, this case has never been pled as a mixed-motive claim. Although Plaintiff addresses Defendants' arguments about untimely raising a mixed-motive theory of discrimination for the first time during summary judgment, she never states that Defendants had more than one motive for firing her. This is not a case where an employee *admittedly* had work performance issues *and* where the employee's protected characteristic motivated the employer to take an adverse action. Rather, Plaintiff maintains that she followed all procedures, did not break any rules, and was completely justified in her actions following the Rotela incident. In effect, Plaintiff pled and continues to argue that Defendants' *sole* motivation was to discriminate based on her race, gender, or age. As a result, the Court finds that a mixed-motive analysis is inappropriate. *See Johnson,* 2016 WL 4536406 at *3. However, even if the Court were to find some justification for applying the mixed-motive framework to this action, Plaintiff still has failed to establish that an illegitimate factor played a motivating role, at all, in FAU's decision to terminate her. *Quigg*, 814 F.3d at 1239.

## II. Age Discrimination Claim against FAU

Plaintiff also claims that FAU terminated her because of her age. To establish a prima facie case of age discrimination, Plaintiff must prove "(1) that she was a member of the protected group of persons between the ages or forty and seventy; (2) that she was subject to an adverse employment action; (3) that a substantially younger person filled the position . . . from which she was discharged; and (4) that she was qualified to do the job for which she was [terminated]." *Kragor v. Takeda Pharmaceuticals*, 702 F.3d 1304, 1308-09 (11th Cir. 2012). Plaintiff may also

---

8  In addition, Dr. Brown clearly is entitled to qualified immunity as he did not violate any clearly established law. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) ("although intent is irrelevant for a qualified immunity inquiry per se . . . it is relevant if intent is an element of the underlying constitutional violation.").

15

establish her prima facie case by showing that similarly situated employees who were substantially younger than her received more favorable treatment. *Caraway v. Sec'y U.S. Dept. of Transp.*, 550 Fed. App'x 704, 709 (11th Cir. 2013).

Plaintiff argues that Hortsman, a younger person, replaced her and that therefore she has established a prima facie case. However, it is undisputed that Hortsman is less than six years younger than Plaintiff. The Court finds that, in this instance, Hortsman is not "substantially younger" than Plaintiff. *See Suarez v. School Bd. of Hillsborough County, Fla.*, 638 Fed.Appx. 897, 901 (11th Cir. 2016) (finding six year age difference insufficient to establish prima facie case). While the Eleventh circuit has held that in some cases a smaller age difference is sufficient to state a prima facie case, it appears to have limited those rulings to cases where there is "substantial evidence of discriminatory animus beyond mere age difference." *Id.* at 901 n.1 ("[Plaintiff] failed to create an inference of discrimination because a six-year age difference, without more, does not establish that Mr. Suarez's age was the but-for cause of the school Board's failure to hire him."). Accordingly, the Court finds that Plaintiff has failed to establish a prima facie case of age discrimination.

In addition, the record is very clear in this case that Defendants terminated Plaintiff due to her handling of and the fallout from the Rotella incident. Under the ADEA, age must be the "but-for" cause of the adverse employment action. Even if Defendants took into account that Hortsman was younger or that Plaintiff participated in the DROP retirement program,[9] age simply was not the but-for cause for Plaintiff's termination. *See Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 177-78 (2009) (holding that the ADEA does not authorize mixed-motive claims).

---

9  The fact that four other DROP participants were terminated does not support Plaintiff's prima facie case or a finding of pretext as Plaintiff fails to present this information in a manner that is statistically significant. Maybe FAU fired the only remaining DROP participants or maybe FAU retained 100 DROP participants and only fired four. Without context, the evidence is meaningless and fails to support Plaintiff's claims. *See Watkins v. Sverdrup Technology, Inc.*, 153 F.3d 1308, 1314-15 (11th Cir. 1998) (data "lacked sufficient depth, specificity, and probative value to constitute both prima facie and pretext evidence.")

Accordingly, summary judgment shall be entered in favor of FAU on Plaintiff's age discrimination claims.

## III. Retaliation Claim against FAU

Title VII prohibits retaliation against an employee who has opposed an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a). The *McDonnell* Douglas burden-shifting analysis applies to claims for retaliation based on circumstantial evidence. *Brown v. Alabama Dept. of Transportation*, 597 F.3d 1160, 1181 (11th Cir. 2010). To prove a prima facie case for retaliation, Plaintiff must establish that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008). Once Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action, at which point the burden shifts back to Plaintiff to show pretext. *See Brown*, 597 F.3d 1160.

Plaintiff argues that FAU terminated her after she complained that she was being treated differently for her handling of the Rotela incident. While this might be sufficient to establish a prima face case, the Court finds that, as detailed above, Plaintiff fails to rebut Defendant's legitimate non-discriminatory reason – namely that it fired Plaintiff for her handling of the Rotela incident. Accordingly, summary judgment must be granted in favor of Defendant on this count.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that:

17

1. Defendant Florida Atlantic University Board of Trustees's Motion for Summary Judgment [ECF No. 74] is GRANTED;

2. Defendant Charles L. Brown's Motion for Summary Judgment [ECF No. 75] is GRANTED;

3. This case is CLOSED and all pending motions are DENIED as MOOT.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of May, 2017

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE